JS 44  (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Mary O. Mendez, as Admx. Ad Prosequendum of the Estate of Bryan Jadiel Mendez, Deceased; Mary O. Mendez, Individually in her own right; Miletzy Hernandez

## DEFENDANTS

United States of America, Cindy Aves, M.D., Kristy Crawford, D.O., Dhiren Soni, D.O., Beryl Kelley, R.N., Christine Ward, R.N., Barbara Murphy, R.N.,. Joanne Healey, R.N. (continued on attached page)

**(b)** County of Residence of First Listed Plaintiff  Camden
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, Email and Telephone Number)*
Loren Finesmith, Esquire, 1521 Locust Street, 10th Floor, Philadelphia, PA 19102; email: lfinesmth@yahoo.com; Tel. (215) 985-0667

Attorneys *(If Known)*
Carolyn R. Sleeper and Jared L. Silverstein, Parker McCay, P.A., 9000 Midlantic Drive, Suite 300, P.O. Box 5054, Mt. Laurel, N.J. 08054-5054, representing (continued on attached page)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☒ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Federal Tort Claims Act, 28 USC.§§ 1341(t), 2671-80, etc.
Brief description of cause:
Medical Malpractice

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 12,100,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE  12/12/2014

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

Civil Cover Sheet Continuation Page
Mary Mendez, as Admx. et al. v. United States of America, et al.

<u>Defendants</u>

Magaret Nece, R.N., Lynn Helmes, R. N., Ms./Mr. Profico, R.N., Mr./Ms. Alice, R.N., Suzanne Panayiotou, CRNA, Cooper Anesthesia Associates, P.C. a/k/a Cooper Anesthesia Associates, Cooper University Hospital,  and Cooper University Physicians

<u>Defendants Represented by Carolyn R. Sleeper, Esquire and Jared L. Silverstein, Esq.</u>

Cooper University Hospital, Cooper Anesthesia Associates, Cooper University Physicians, Dhiren Soni, D.O., Cindy Aves, M.D., Christine Ward, R.N., Margaret Nece, R.N., and Lynn Helmes, R.N.

**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF NEW JERSEY**

MARY O. MENDEZ, Individually and as       :
Mother of the Decedent in her own right and :
as Administratrix Ad Prosequendum of the    :
Estate of Bryan Jadiel Mendez, Deceased     :       HONORABLE
2121 Mt. Ephraim Avenue                     :
Apartment A-3                               :
Camden, NJ  08104                           :
                                            :
       and                                  :       CIVIL ACTION NO.:
                                            :
MILETZY HERNANDEZ                           :
2121 Mt. Ephraim Avenue                     :
Apartment B-14                              :
Camden, NJ  08104                           :
                                            :
            Plaintiffs                      :
                                            :
            vs.                             :
                                            :
UNITED STATES OF AMERICA                    :
c/o Attorney General Eric Holder            :
950 Pennsylvania Avenue, NW                 :
Washington, DC 20530-0001                   :
and                                         :
Paul J. Fishman                             :
United States Attorney                      :
Camden Federal Building & U.S. Courthouse:
401 Market Street, 4th Floor                :
Camden, NJ 08101-2098                       :
                                            :
            and                             :
                                            :
CINDY AVES, M.D.                            :
Department of Obstetrics  and Gynecology    :
3 Cooper University Plaza                    :
Camden, NJ  08103                           :
                                            :
            and                             :
                                            :
KRISTY CRAWFORD, D.O.                       :
Department of Obstetrics and Gynecology     :
3 Cooper University Plaza                    :
Camden, NJ  08103                           :
                                            :
            and                             :

:

DHIREN SONI, D.O.                                           :
Cooper Anesthesia Associates, P.C.                          :
One Cooper University Plaza                                 :
Camden, NJ  08103                                           :
                                                            :
            and                                             :
                                                            :
BERYL KELLEY, R.N.                                          :
Department of Obstetrics  and Gynecology                    :
3 Cooper University Plaza                                   :
Camden, NJ  08103                                           :
                                                            :
            and                                             :
                                                            :
CHRISTINE WARD, R.N.                                        :
Department of Obstetrics  and Gynecology                    :
3 Cooper University Plaza                                   :
Camden, NJ  08103                                           :
                                                            :
            and                                             :
                                                            :
BARBARA MURPHY, R.N.                                        :
Department of Obstetrics  and Gynecology                    :
3 Cooper University Plaza                                   :
Camden, NJ  08103                                           :
                                                            :
            and                                             :
                                                            :
JOANNE HEALEY, R.N.                                         :
Department of Obstetrics  and Gynecology                    :
3 Cooper University Plaza                                   :
Camden, NJ  08103                                           :
                                                            :
            and                                             :
                                                            :
MARGARET NECE, R.N.                                         :
Department of Obstetrics  and Gynecology                    :
3 Cooper University Plaza                                   :
Camden, NJ  08103                                           :
                                                            :
            and                                             :
                                                            :
LYNN HELMES, R.N.                                           :
Department of Obstetrics  and Gynecology                    :
3 Cooper University Plaza                                   :
Camden, NJ  08103                                           :
                                                            :
            and                                             :
                                                            :

2

```
MR./MS. PROFICO, R.N.                        :
Department of Obstetrics  and Gynecology     :
3 Cooper University Plaza                    :
Camden, NJ  08103                            :
                                             :
            and                              :
                                             :
MR./MS. ALICE, R.N.                          :
3 Cooper University Plaza                    :
Camden, NJ  08103                            :
                                             :
            and                              :
                                             :
SUZANNE PANAYIOTOU, CRNA                     :
Cooper University Hospital                   :
Department of Anesthesiology                 :
One Cooper UniversityPlaza                   :
Camden, NJ  08103                            :
                                             :
                                             :
COOPER ANESTHESIA ASSOCIATES, P.C.  :
a/k/a COOPER ANESTHESIA ASSOCIATES  :
One Cooper University Plaza                   :
Camden, NJ  08103                            :
                                             :
            and                              :
                                             :
COOPER UNIVERSITY HOSPITAL                   :
3 Cooper University Plaza                    :
Camden, NJ  08103                            :
                                             :
            and                              :
                                             :
COOPER UNIVERSITY PHYSICIANS                 :
3 Cooper University Plaza                    :
Camden, NJ  08103                            :
                                             :
_____     :
```

## COMPLAINT - CIVIL ACTION

This is a civil action for medical malpractice.

## THE PARTIES

1.    Plaintiff, Mary O. Mendez (hereinafter "Mendez"), was at all times relevant and

material hereto, an adult individual residing at the above-captioned address.  She brings

this action individually and as mother of the Bryan Jadiel Mendez, Deceased (hereinafter

the "Decedent") in her own right and as the Administratrix Ad Prosequendum of the Estate of Bryan Jadiel Mendez, Deceased (hereinafter the "Estate"). A true and correct copy of the letters of administration granted to the plaintiff by the Camden County Surrogate's Court is attached hereto an incorporated by reference as Exhibit "A."

2.     Plaintiff, Miletzy Hernandez, is the sister of Plaintiff, Mary O. Mendez, and was at all times relevant and material hereto, an adult individual residing at 101 N. 22nd Street, Camden, NJ 08105.

3.     Defendant, United States of America, is a sovereign nation organized pursuant to its Constitution and laws, with legal representatives as captioned above.

4.     At all times relevant and material hereto, Defendant United States of America acted by and through its employee, Eric Chang, D.O. (hereinafter "Dr. Chang") who at all times relevant hereto was acting within the course and scope of his employment and in furtherance of the interests of Defendant United States of America pursuant to 42 U.S.C. § 233(g)-(n).

5.     At all times relevant and material hereto, Dr. Chang was a physician licensed to practice medicine in the State of New Jersey, employed by CAMcare Health Corporation a/k/a CAMcare a/k/a CAMcare OB/GYN (hereinafter "CAMcare"), 817 Federal Street, Suite 101, Camden, NJ  08103, and at all times relevant and material hereto, Defendant United States of America and Dr. Chang held out Dr. Chang as skillful and qualified to render medical care to patients such as Plaintiff, Mendez, and plaintiffs' decedent herein.

6.     At all times relevant and material hereto, CAMcare was deemed a Public Health Services employee by the Secretary of Health and Human Services under 42 U.S.C. § 233(g). As such, all employees of CAMcare were deemed to be employees of the United

States of America, which is the proper party in this action under the Federal Tort Claims Act.

7.    Defendant, Dr. Cindy Aves (hereinafter "Dr. Aves"), at all times relevant and material hereto was a physician licensed to practice medicine in the State of New Jersey with an office at 3 Cooper University Plaza, Camden, New Jersey 08103, and at times relevant and material hereto this defendant held herself out as skillful and qualified to render medical care to patients such as Plaintiff, Mendez, and plaintiffs' decedent herein.

8.    Defendant, Kristy Crawford, D.O., at all times relevant and material hereto was a physician licensed to practice medicine in the State of New Jersey with an office at 3 Cooper University Plaza, Camden, NJ 08103, and at all times relevant and material hereto this defendant held herself out as skillful and qualified to render medical care to patients such as Plaintiff, Mendez, and plaintiffs' decedent herein.

9.    Defendant, Dhiren Soni, D.O., at all relevant and material times hereto was licensed to practice medicine in the State of New Jersey with an office therein at One Cooper Plaza, Camden, NJ 08103, and at all times relevant and material hereto this defendant held himself out as skillful and qualified to render medical care to patients such as Plaintiff, Mendez, and plaintiffs' decedent herein.

10.   Defendants, Beryl Kelley, R.N., Christine Ward, R.N., Barbara Murphy, R.N., Joanne Healey, R.N., Margaret Nece, R.N., Lynn Helmes, R.N., Mr./Ms. Profico, R.N., and Mr./Ms. Alice, R.N. (hereinafter the "Obstetrical Nurses") at all times relevant and material hereto were licensed registered nurses in the State of New Jersey with an office therein at 3 Cooper University Plaza, Camden, NJ 08103 and at all times material hereto

held themselves out as skillful and qualified to render obstetrical nursing care to patients such as the Plaintiff, Mendez, and plaintiffs' decedent herein.

11. Defendant, Suzanne Panayiotou, CRNA (hereinafter "CRNA Panayiotou") at all relevant and material times hereto were licensed Certified Registered Nurse Anesthetist in the State of New Jersey with an office therein at One Cooper Plaza, Camden, NJ 08103, and at all times material hereto held herseof out as skillful and qualified to render nurse anesthetist care to patients such as the Plaintiff Mendez and plaintiffs' decedent herein.

12. Defendant, Cooper University Hospital, at all times relevant and material hereto was a non-profit organization and/or other business entity licensed in the State of New Jersey to provide medical care, maintaining and operating a hospital and medical facility at 3 Cooper University Plaza, Camden, NJ 08103, and at all times relevant and material hereto this defendant held out itself; Defendants Dr. Aves, Dr. Crawford, Dr. Soni, Dr. John/Jane Doe Anesthesiologist, and the Obstetrical Nurses; and Dr. Chang as skillful and qualified to render medical care to patients such as Plaintiff, Mendez, and plaintiffs' decedent herein.

13. Defendant, Cooper University Physicians, at all relevant and material times hereto was a non-profit organization and/or other business entity licensed in the State of New Jersey to provide medical care, with offices at 3 Cooper Plaza, Camden, New Jersey 08103, and at all relevant and material times hereto this defendant held out itself and Defendants Dr. Aves, Dr. Crawford, and Dr. Soni as skillful and qualified to render medical care to patients such as Plaintiff, Mendez, and plaintiffs' decedent herein.

14. Defendant, Cooper Anesthesia Associates, P.C. a/k/a Cooper Anesthesia Associates, at all relevant and material times hereto was a non-profit organization and/or other business entity licensed in the State of New Jersey to provide medical care, with offices at One Cooper Plaza, Camden, New Jersey 08103, and at all relevant and material times hereto held out itself, Defendants Dr. Soni and CRNA Panayiotou as skillful and qualified to render medical care to patients such as Plaintiff, Mendez, and plaintiffs' decedent herein.

15. At all times relevant and material times hereto, Defendants Dr. Aves and Dr. Crawford, as well as Dr. Chang, were employees and/or ostensible agents of Defendants Cooper University Hospital and Cooper University Physicians, acting within the course and scope of their employment and/or ostensible agency and in furtherance of the business and affairs of their employer(s), principal(s) and/or ostensible principal(s).

16. At all times relevant and material hereto, Defendants Dr. Soni and Suzanne Panatioyou, CRNA, were employees and/or ostensible agents of Defendants Cooper University Hospital, Cooper Anesthesia Associates, P.C. a/k/a Cooper Anesthesia Associates, and Cooper University Physicians, acting within the course and scope of their employment and/or ostensible agency and in furtherance of the business and affairs of their employer(s), principal(s) and/or ostensible principal(s).

17. At all times relevant and material hereto, Defendants Beryl Kelley, R.N., Christine Ward, R.N., Barbara Murphy, R.N., Joanne Healey, R.N., Margaret Nece, R.N., Lynn Helmes, R.N., Mr./Ms. Profico, R.N., and Mr./Ms. Alice, R.N. (i.e., the Defendant Obstetrical Nurses) were employees and/or ostensible agents of Defendant Cooper University Hospital, acting within the course and scope of their employment, agency,

and/or ostensible agency and in furtherance of the business and affairs of his employer, principal, and/or ostensible principal.

18.   When the word "Defendants" is used, it shall refer to all defendants collectively and/or in the alternative to more than one group of defendants.

19.   At all times relevant and material hereto, Mendez and the Decedent were under the treatment, care and attendance of the Defendants, individually, jointly and/or severally.

20.   At all times relevant and material hereto, the defendants were acting by, through and on behalf of their agents, servants, ostensible agents, contractors, subcontractors, students, workers and/or employees acting within the course and scope of their employment, agency, duty and/or authority and under the control or right of control of defendants.

21.   At all times relevant and material hereto, the defendants were/are vicariously liable for their agents, servants, ostensible agents, students, workers and/or employees acting within the course and scope of their employment, agency, duty and/or authority and under the control or right of control of defendants.

22.   At all times relevant and material hereto, Mendez and the Decedent were rendered medical care by all defendants, personally and by and through their employees, agents, and/or ostensible agents, and the defendants and their employees, agents, and/or ostensible agents directly and/or impliedly agreed to exercise the degree of specialized care and skill in their diagnosis, monitoring and treatment of Mendez and Decedent as is/was expected of persons and facilities in their professional standing.

23.   At all times relevant and material hereto, all defendants, individually or through their employees, agents, and/or ostensible agents, knew or, with the exercise of

reasonable medical knowledge, care and skill, would have known of the nature and extent of the condition of Mendez and the Decedent.

24.   At all times relevant and material hereto, Mendez and the Decedent were under the treatment, care and attendance of the defendants either individually or by and through their employees, agents, and/or contractors, acting within the course and scope of their employment and/or agency.

25.   At all times relevant and material hereto, Mendez, was pregnant with and/or in labor and/or delivery with the Decedent, who was full term at the time of labor and delivery.

## PROCEDURAL BACKGROUND

26.   Plaintiffs filed their instant claims in a complaint in the Superior Court of Camden County, New Jersey, Law Division, against defendants including CAMcare, Dr. Chang, and other employees of CAMcare, as well as the other defendants herein, docketed as Case No. L-3214-12, on July 19, 2012.

27.   Said action was removed by Defendant United States of America, to the United States District Court for the District of New Jersey, Camden vicinage, on April 10, 2013, where said action was docketed at 13-cv-2274.  Defendant United States of America was substituted as the proper defendant in the place of CAMcare, Dr. Chang, and other employees of CAMcare,

28.   Defendant United States of America filed a Motion to Dismiss pursuant to to Federal Rule of Civil Procedure 12(b)(6) on April 17, 2013 for plaintiff's filing their state action without having exhausted their administrative remedies.  This motion was granted

and plaintiffs' claims against Defendant United States of America were dismissed without prejudice on October 23, 2013.

29. Plaintiffs' claims against the other defendants herein were remanded to the New Jersey Superior Court.

30. Plaintiffs presented timely Federal Tort Claims Act claims by email to the the United States Department of Health and Human Services on December 20, 2013, and these claims were on denied by letter mailed by DHHS on June 13, 2014. Plaintiffs have thus exhausted their administrative remedies.

31. On June 23, 2014, the Honorable Judge Anthony J. Pugliese of the New Jersey Superior Court entered an order dismissing plaintiffs' state action without prejudice by agreement of the parties so that the plaintiffs could re-assert their claims against the other defendants herein in an action filed against the United States of America and said defendants.

## JURISDICTION AND VENUE

32. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(b) and 28 U.S.C. § 1367(a).

33. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b) because the cause of action upon which the complaint is based arose in the City of Camden, which is in the District of New Jersey.

## FACTUAL BACKGROUND

34. As of July 20, 2010, Mendez was 34 years old and was carrying her second baby.

35. Mendez was morbidly obese and suffered from gestational diabetes.

36.   Mendez had multiple prenatal office visits at CAMcare, including office visits with Dr. Chang, who was aware that Mendez had gestational diabetes and that the Decedent was large, especially for his gestational age.

37.   As of on or about July 9, 2010, the weight of the Decedent, Bryan Jadiel Mendez, was estimated at 3731 grams, placing him above the 90th percentile and making him large for his gestational age.

38.   On or about June 20, 2010, at approximately 4:45 p.m., Mendez had a spontaneous rupture of membranes and went to Cooper University Hospital for labor, medical care, and the delivery of her baby.

39.   Mendez arrived at the hospital at about 5:04 p.m. on July 20, 2010.

40.   At the time that she presented to the hospital, Plaintiff Mendez was at approximately 37 and 5/7 weeks gestation and her baby was viable.

41.   Mendez was moved to the Labor Room and placed on an electronic fetal and maternal heart rate monitor within a few minutes after arriving at the hospital.

42.   Dr. Chang was Mendez's attending physician for her labor and delivery.  He was assisted by Dr. Aves and Dr. Crawford.

43.   Dr. Chang told Mendez during her labor that she would have a vaginal delivery but might require suction.  He did not recommend a cesarean section.

44.   The defendants, individually by and through their respective employees, agents, and/or contractors, failed to monitor and/or properly monitor Mendez and Decedent while they were under the care of the defendants.

45.   Frequent and ongoing non-reassuring tracings were recorded in the electronic fetal heart rate monitor tracings in Plaintiff, Mendez's, chart along with other signs and

symptoms of ongoing fetal distress and non-reassuring fetal status, including a failure to descend and a nuchal cord, but were not appropriately treated and/or were ignored by Dr. Chang, Defendant Dr. Aves, Defendant Dr. Crawford, and the Defendant Obstetrical Nurses throughout the course of Plaintiff, Mendez's labor.

46.   Likewise, mother, Plaintiff, Mendez, had signs and symptoms that were non-reassuring that were not diagnosed and/or appropriately treated and/or were ignored by Dr. Chang, Defendant Dr. Aves, Defendant Dr. Crawford, and the Defendant Obstetrical Nurses throughout the course of Plaintiff, Mendez's labor.

47.   At some time during the early morning of July 21, 2012, Dr. Chang told Mendez that she probably would need a cesarean section, but he made no recommendation.

48.   Plaintiff Mendez's hospital chart indicates that at approximately 3:35 a.m. on July 21, 2012, Dr. Chang decided that a cesarean section had to be performed immediately due to the Decedent, Bryan Jadiel Mendez's, failure to descend and non-reassuring fetal heart rate.  At about 3:55 a.m., all monitors were removed.

49.   Decedent's hospital chart states that a neonatal intensive care unit team was summoned to attend an emergency cesarean section.

50.   According to her hospital chart, Plaintiff Mendez was moved from the labor and delivery room to an operating room at approximately 4:00 a.m..

51.   Between 4:00 a.m. and 4:25 a.m., a monitor (believed to be either a scalp electrode monitor or a TOCO monitor) was put in place to monitor Decedent, Bryan Jadiel Mendez's, fetal heart reate.

52.   Dr. Chang and/or Dr. Aves decided to perform a Pfannenstiel incision procedure.

53.   At approximately 4:00 a.m. to 4:11 a.m., Defendants Dr. Soni and CRNA Panayiotou began administering spinal anesthesia.

54.   At approximately 4:11 a.m., according to Plaintiff, Mendez's chart, anesthesia was ready.

55.   Neither continuous nor regular monitoring of the Decedent, Bryan Jadiel Mendez's, fetal heart rate was performed after 3:55 a.m.

56. A handwritten note prepared by Dr. Chang in Plaintiff Mendez's hospital chart on a form stating "This form must be completed by the physician after obtaining permission for autopsy," states that the Decedent suffered fetal bradycardia immediately after anesthesia was placed.

57. A note by Defendant Beryl Kelly, R.N., in Plaintiff Mendez's hospital chart states that in the operating room the Decedent's fetal heart rate dropped from the 140s (beats per minute) to the 70's and/or 60's.  This note also states that Dr. Chang and Dr. Aves were notified of the Decedent's bradycardia.

58.   Dr. Chang's typed operative note in Plaintiff Mendez's hospital chart states that fetal bradycardia was noted during preparation of Plaintiff Mendez's abdomen for surgery.

59.   Decedent's hospital admission history states that the Decedent's fetal heart rate was noted on the monitor was noted to be approximately 50 (beats per minute) "just prior to starting the C/section."

60.   At approximately 4:25 a.m., Dr. Chang or Dr. Aves made the Pfannenstiel abdominal incision of Plaintiff Mendez.

61.   At approximately 4:30 a.m., Dr. Chang or Dr. Aves made the uterine incision of Plaintiff, Mendez.

62.   Between 4:30 and 4:35 a.m., Dr. Chang and/or Dr. Aves made repeated attempts to deliver the Decedent, Bryan Jadiel Mendez, finding delivery extremely difficult.

63.   At 4:35 a.m., the Decedent, Bryan Jadiel Mendez, was finally delivered.

64.   According to Dr. Chang's handwritten staff operative note, the neonatal intensive care unit team was present at the time of delivery.

65.   The handwritten neonatology note written by the decedent's attending neonatologist states that a tight nucal cord was noted at the time of delivery.   Upon information and belief, concern about a possible nuchal cord was among the reasons for Dr. Chang's decision to perform the cesarean section.

66.   Plaintiff, Mendez's, hospital chart, states that the Decedent, Bryan Jadiel Mendez, had a heart rate of approximately 10 to 20 beats per minute upon delivery and no heart sounds 30 seconds after birth.  His Apgar scores were recorded as 0,0,0 and 0 for 1, 5, 10 and 20 minutes respectively.

67.   The baby had no movement and was limp at birth, and his skin was cyanotic.

68.   All attempts to resuscitate the baby ended unsuccessfully at 4:47 a.m., and he was pronounced dead at 5:00 a.m. on July 21, 2010.

69.   The infant's birth weight was 4515 grams.

70.   The baby did not have any congenital anomalies.

71.   Plaintiff, Mendez, gave the defendants consent for an autopsy, but none was performed.

72. Plaintiff, Miletzy Mendez, was present with Plaintiff, Mendez, in the labor and delivery room at all times until Mendez was moved to the operating room. Miletzy Mendez was not permitted to enter the operating room.

73. Shortly after the Decedent, Bryan Jadiel Mendez, was declared dead, a nurse took his corpse out of the operating room and showed it to Plaintiff, Miletzy Mendez.

74. The defendants, individually and by and through their respective employees, agents and/or contractors, deviated from good and acceptable standards of care.

75. Furthermore, these deviations directly caused the death of Decedent, Bryan Jadiel Mendez.

76. Based upon information and belief, some records relating to the Decedent's bradycardia are missing from Plaintiff Mendez's and/or the Decedent's hospital charts and/or never were created or maintained.

77. Numerous errors, omissions, actions, failures to act, gross negligence, recklessness, willful and wanton conduct, gross negligence and otherwise led to Mendez's overly prolonged and excruciating labor; the overly prolonged and unnecessary fetal distress of the *in utero* baby; the improper delivery of the baby; the demise of the baby/Decedent who was viable at the time of labor; and the trauma, both physically and emotionally to Mendez.

78. As a direct result of the actions and inactions, both negligent and intentional, of the defendants, individually and by and through their respective employees and/or agents ostensible agents, during the course of Mendez's labor and upon seeing her baby delivered stillborn, Mendez, suffered severe emotional shock to her nerves and nervous system, humiliation, embarrassment and depression and caused her to suffer great mental

anguish, loss of life's pleasures, loss of general health, strength, and vitality, and physical pain, all of which will continue for an indefinite time into the future.

79.   The actions and inactions, both negligent and intentional, by all defendants during the course of Mendez's labor and the delivery of the Decedent were extreme and outrageous and intolerable in society causing the Plaintiff Mendez and Decedent, and Plaintiff Miletzy Mendez as well, to suffer physical harms and/or severe emotional shock to their nerves and nervous systems and/or death.

**COUNT I**
**MEDICAL-MALPRACTICE**
**PLAINTIFF MARY O. MENDEZ, as Administratrix**
**Ad Prosequendum of the Estate of Bryan Jadiel Mendez, Deceased,**
**and MARY O.  MENDEZ, in her own right**
**V. DEFENDANT, UNITED STATES OF AMERICA**

80.   Plaintiffs incorporate by reference all prior paragraphs the same as though set forth herein at length.

61.    At all relevant and material times hereto, Dr. Chang failed in his duty to provide Mendez and her *in utero* son, the Decedent, with proper medical care in his capacity as the attending physician during the course of Mendez's labor delivery and thereafter from July 20 through 21, 2010, while Mendez and the Decedent were patients at Cooper University Hospital.

62.    During the aforementioned hospitalization of Mendez and the Decedent, the negligence and carelessness; reckless, willful, and wanton misconduct; and failures to comply with the applicable standards of medical care and conduct of the defendant, by and through its employee, Dr. Chang, consisted of the following:

   (a)     Failing to possess and exercise the degree of knowledge, care and skill ordinarily exercised in similar cases by attending physicians;

(b)     Failing to conform to all applicable standards of medical care under the circumstances;

(c)     Failing to exercise reasonable care in the diagnosis of the Decedent's condition for which prompt diagnosis and treatment were critical for effective medical treatment and to save his life;

(d)     Failing to properly and adequately recognize and treat Mendez's deteriorating conditions during labor in the face of obvious signs and symptoms;

(e)     Failing to properly and adequately recognize and treat the Decedent's deteriorating conditions in the face of obvious signs and symptoms;

(f)     Failing to perform necessary medical testing;

(g)     Failing to follow appropriate fetal/uterine monitoring procedures;

(h)     Failing to personally monitor the Decedent's fetal heart rate in the delivery room with sufficient regularity or at all;

(i)     Failing to inquire of the nurse(s) and/or other physicians in the delivery room as to the Decedent's fetal heart rate with sufficient regularity or at all;

(j)     Failing to personally monitor the Decedent's fetal heart rate in the operating room with sufficient regularity or at all;

(k)     Failing to inquire of the nurse(s) and/or other physicians in the operating room as to the Decedent's fetal heart rate with sufficient regularity or at all;

(l)     Failing to effect a rapid delivery to avoid neonatal and/or maternal morbidity;

(m)     Failing to perform the cesearean section in a timely manner;

(n)     Failing to promptly perform the abdominal and uterine incisions;

(o)     Failing to timely perform an emergency cesarean section;

(p)     Failing to follow the recommendations, and/or protocols of the American College of Obstetrician and Gynecologists for labor fetal distress a/k/a non reassuring fetal status, and delivery;

(q)     Failing to perform his duties as attending physician in the delivery room by failing to attend to Mendez and the Decedent and leaving their care to an unqualified resident or other unqualified physician or to obstetrical nurses;

(r)     Failing to perform his duties as attending physician in the operating room by failing to attend to Mendez and the Decedent and leaving their care to an unqualified resident or other unqualified physician or to obstetrical nurses;

(s)     Failing to monitor and interpret with sufficient regularity or at all, properly interpret, read, properly read and/or otherwise understand the fetal heart rate tracing strips;

(t)     Failing to recognize and properly treat the Decedent's non-reassuring fetal status;

(u)     Failing to recognize the signs and symptoms indicative of a baby in fetal distress;

(v)   Failing to appreciate the signs and symptoms of a baby in fetal distress and the possible consequences of the same;

(w)   Failing to employ available appropriate methods of treatment for a baby in fetal distress;

(x)   Failing to observe and/or know Mendez's and/or the baby's signs and symptoms of hypoxia and/or asphyxia;

(y)   Failing to consider all options for the delivery;

(z)   Failing to perform necessary medical testing;

(aa)  Failing to timely consider any options for delivery;

(bb)  Failing to improve fetal oxygenation;

(cc)  Ordering or acquiescing in the use of spinal anesthesia where the need for an emergency c-section required a faster form of anesthesia;

(dd)  Failing to use general anesthesia, local anesthesia to the abdomen, other faster-acting anesthesia, or no anesthesia where there was an need to perform the c-section immediately;

(ee)  Failing to use general anesthesia, local anesthesia to the abdomen or uterus, other faster-acting anesthesia, or no anesthesia where there was an need to complete the c-section immediately;

(ff)  Ordering, using, or acquiescing in the use of a Pfannenstiel incision;

(gg)  Ordering, using, or acquiescing in the use of a Pfannenstiel incision rather than a method of Cesearian Section allowing for a faster and easier delivery and one less vulnerable to complications during delivery than the Pfannenstiel abdominal incision procedure;

(hh)  Failing to follow appropriate shoulder dystocia, umbilical cord prolapse, and/or abruptio placenta treatment procedures and protocols and thus failing to render proper treatment of the same;

(ii)  Failing to follow appropriate umbilical cord prolapse procedures;

(jj)  Failing to follow appropriate abruptio placenta procedures;

(kk)  Failing to recognize signs and symptoms suggesting cord compression;

(ll)  Failing to properly relieve the umbilical cord compression;

(mm)  Failing to properly administer amnioinfusion;

(nn)  Failing to recognize pre-eclampsia and/or to treat the same appropriately;

(oo)  Failing to recognize eclampsia and/or to treat same appropriately;

(pp)  Failing to recognize uteroplacental insufficiency and/or to treat same appropriately;

(qq)  Leaving Mendez in labor too long thereby failing avoid any complications and/or problems or otherwise compromising the health, safety, welfare and/or life of the mother or the baby;

(rr)  Failing to take a fetal scalp PH;

(ss)  Failing to utilize a fetal acoustic stimulator or a fetal scalp stimulator;

(tt)  Failing to take in utero resuscitative measures;

(uu)  Practicing outside his area or limits of expertise and/or competence;

(vv)  Failing to properly direct and supervise the residents and interns who participated in the care of Mendez and the Decedent, and the physicians assistants, nurses, and nursing assistants who participated in their care;

(ww)    Failing to keep appropriate, accurate, and complete records and/or any records pertaining to Mendez and/or the Decedent;

(xx)    Failing to produce and/or destroying some or all of the medical chart pertaining to Mendez, the Decedent and any subsequent medical treatment, care and/or analysis;

(yy)    Disregarding the obvious signs and symptoms of nonreassuring fetal status, this allowing Mendez and the Decedent to suffer for a prolonged period, and taking the risk of harm to Mendez and her baby's health, welfare, safety and/or life allowing the baby to die;

(zz)    Failing to follow the chain of command;

(aaa)   Failing to render appropriate medical care to Mendez and the Decedent;

(bbb)   Failing to recognize the contraindications for the administration of medications given and thus prolonging labor and delivery and causing a substantial risk of harm to Mendez and her baby;

(ccc)   Failing to examine and/or properly examine Mendez;

(ddd)   Failing to improve fetal oxygenation through appropriate techniques, procedures and/or devices or at all;

(eee)   Failing to administer appropriate and timely medications to treat Mendez and   the Decedent during the course of labor and delivery;

(fff)   Failing to make a decision which mandated operative delivery and/or as to how urgently the same should have been performed;

(ggg)   Failing to call for further medical assistance when needed whether from the same specialty or others, another department, another attending, the CMO and/or any other appropriate medical personnel, staff, contractors and/or otherwise;

(hhh)   Failing to consider and/or order or perform an episiotomy;

(iii)   Failing to assure appropriate medical orders and/or instructions to those in whose care the defendant left Mendez and the Decedent;

(jjj)   Failing to perform any maneuvers for shoulder dystocia and to aid in the safe delivery of the baby;

(kkk)   Failing to be trained in proper labor and delivery procedures;

(lll)   Failing to consider any and all maneuvers possible to alleviate any ~~labor or~~ delivery problems;

(mmm)  Failing to know how to monitor, manage and/or properly monitor and/or manage Mendez's care; labor and the delivery of her baby;

(nnn)   Causing the preventable death of the Decedent and loss of Plaintiffs' child;

(ooo)   Failing to know how to monitor, manage and/or properly monitor and/or manage the Decedent's care and delivery;

(ppp)   Failing to follow hospital protocols, rules, regulations, procedures, policies and requirements;

(qqq)   Failing to treat in accordance with the standards of acceptable medical care, prudence and practice;

(rrr)   Failing to properly manage the Decedent's airway;

(sss)   Failing to perform a proper physical examination of Mendez and/or the Decedent;

(ttt)     Failing to properly manage Mendez's and the Decedent's physiological conditions;

(uuu)    Failing to transfer the responsibility for the care of Mendez and/or the Decedent to other qualified providers in a manner which would have assured, quality, continuity of care and patient safety;

(vvv)    Failing to monitor and/or properly monitor Mendez and the Decedent;

(www)   Failing to take precautions to minimize the risk of injuries and/or death to the baby and/or the mother;

(xxx)    Failing to respect and maintain the basic rights of the patient, the plaintiff;

(yyy)    Failing to incorporate any hospital and/or medical standards into defendants' practice;

(zzz)    Reckless conduct causing emotional distress which renders the defendant liable as if he had acted intentionally;

(aaaa)   Committing numerous and/or current deviations from the standards of care which substantially increased the risk of the baby's death;

(bbbb)   Committing numerous and recurring deviations from the standards of care resulting in pain and suffering to the mother;

(cccc)   Committing numerous and recurring deviations from the standards of care which were substantial cause of Decedent's death;

(dddd)   Falling below the acceptable standards of care from an obstetrical stand-point and failing to take action to see that the Decedent was timely delivered and/or that a c-section was performed;

(eeee)   Failing to act in a timely manner so that Mendez would have had a successful delivery and the Decedent would be alive today and causing Mendez to suffer a prolonged labor and with unnecessary complications of pregnancy to incur the loss of her child;

(ffff)    Negligently and/or intentionally ignoring the signs and symptoms presented by Mendez  and the *in utero* baby and failing to take all steps necessary to deliver the Decedent alive;

(gggg)   Failing to deliver the Decedent before ~~its~~ <u>his</u> condition was life threatening;

(hhhh)   Relinquishing control and care of the Mendez and the Decedent to an unqualified resident/doctor and/or the nurses;

(iiii)    Failing in his responsibility to promptly act in face of major risk factors during the course of delivery while the mother was under the obstetrical care of the defendants;

(jjjj)    Acting in such a manner as to subsequently increase the risk of complications, injury, and of death  to Mendez and/or Decedent;

(kkkk)   Failing to employ, recognize available methods of treatment;

(llll)    Failing to monitor the fetal heart rate tracing strips;

(mmmm)  Failing to properly read and/or interpret the fetal heart rate tracing strips;

(nnnn)   Failing to appreciate the signs and symptoms of fetal distress and the possible consequences of the same;

(oooo)   Failing to promptly act when noting fetal decelerations by placing an electronic fetal monitor on the baby and yet failing to recognize the signs

and symptoms that the fetus was at risk for neurological injuries, other consequences and/or death;

(pppp)  Failing to take timely and appropriate intervention before the underlying conditions, signs and symptoms of the baby caused irreversible damage and/or death;

(qqqq)  Failing to be properly trained interpreting fetal heart rate monitors and monitoring strips and the results;

(rrrr)  Failing to timely intervene before the fetal death occurred;

(ssss)  Failing to administer oxygen to the Decedent;

(tttt)  Failing to prevent asphyxia and the baby's death.

(uuuu)  Failing to notify qualified senior physicians of the signs and symptoms of the Decedent's fetal distress.

(vvvv)  Failing to notify other qualified senior physicians of signs and symptoms of Decedent's fetal distress in a timely manner.

(wwww) Failure to appropriately consult with other medical personnel and/or providers caring for the plaintiff;

(xxxx)  Failing to know the signs and symptoms of a baby in fetal distress.

(yyyy)  Failing to know the signs and symptoms of hypoxia or asphyxia.

(zzzz)  Failing to know how to properly read and/or interpret fetal heart rate tracing strips;

(aaaaa) Failing to know the signs and symptoms of hypoxia or asphyxia;

(bbbbb) Failing to render appropriate medical care and treatment to Mendez and the Decedent;

(ccccc) Failing to prevent the baby's death;

(ddddd) The actions and inactions of Defendant, Dr. Chang, resulted in the death of the Decedent, his failure to be delivered timely and health, and the loss of their son to Plaintiffs, Mendez, and the surviving father.

(eeeee) Dr. Chang's delays in performing the emergency cesarean section demonstrated a reckless indifference to the health and safety of Plaintiff, Mendez, and the health, safety and survival of the Decedent.

62.    As the direct and proximate result of the aforesaid actions and/or inactions of the

defendant, acting by and through its employee, Dr. Chang, as aforesaid, Plaintiff Mendez

sustained severe physical and psychological injuries including, but not limited to, severe

sore, lame, prostrate, disabled and disordered, some or all of which may continue for an

indefinite time into the future.

63.    As the direct and proximate result of the aforesaid actions and/or inactions of the

defendant, acting by and through its employee, Dr. Chang, Plaintiff Mendez has been

forced to endure great pain and suffering, mental anguish, loss of life's pleasures; loss of

general health, strength and vitality; embarrassment, humiliation and physical pain, some or all of which are permanent and may continue for an indefinite time into the future.

64.    As a result of the aforesaid actions and/or inactions of the defendant, acting by and through its employee, Dr. Chang, Plaintiff Mendez has been prevented her from performing her usual and customary daily activities and occupations, which may continue for an indefinite time into the future to her great detriment and loss.

65.    As the direct and proximate result of the aforesaid actions and/or inactions of the defendant, acting by and through its employee, Dr. Chang, the Decedent sustained severe physical injuries, all of which rendered him sick, sore, lame, prostrate, disabled and disordered and forced him to suffer great mental anguish, loss of life's pleasures; loss of general health, strength and vitality; humiliation and physical pain until the time that he passed away.

66.    As a result of the aforesaid actions and/or inactions of the defendant, acting by and through its employee, Dr. Chang, Plaintiff, Mendez, has been or will be obliged to receive and undergo medical attention and care and to expend various expenses for the injuries she and the Decedent have suffered and will continue to incur expenditures for an indefinite time in the future to her great detriment and loss.

67.    As a result of the aforesaid actions and/or inactions of defendant, acting by and through its employee, Dr. Chang, Plaintiff Mendez has sustained loss and depreciation of her earnings and earning capacity, and she may continue to endure the same for an indefinite time into the future to her great detriment and loss.

68.    The aforesaid wrongful acts and omissions of Defendant, acting by and through its employee, Dr. Chang, increased the risk of harm to the Decedent, Bryan Jadiel

Mendez, and were a direct and substantial factor in causing and/or an actual case of his death.

WHEREFORE, Plaintiffs demand compensatory damages from Defendants, jointly and severally, in the amount of $12,000,000, comprising $5,000,000 for Wrongful Death Action damages, $5,000,000 for Survival Action damages, and $2,000,000 for the claims of Plantiff Mary Mendez in her own right, plus costs.

### COUNT II
### NEGLIGENT AND INTENTIONAL MISREPRESENTATIONS
### PLAINTIFF MARY O. MENDEZ, as Administratrix
### Ad Prosequendum of the Estate of Bryan Jadiel Mendez, Deceased,
### and MARY O. MENDEZ, in her own right
### V. DEFENDANT UNITED STATES OF AMERICA

69.     Plaintiffs incorporate by reference all prior paragraphs the same as though set forth herein at length.

70.     Plaintiff Mendez justifiably relied upon the defendant's negligent or intentional representations and/or misrepresentations, by and through defendant's employee, Dr. Chang, both explicitly stated and implied by words or silence, concerning numerous matters during the course of Plaintiff Mendez's labor and Decedent's labor, and delivery as follows:

(a)     That Dr. Chang was overseeing the care of Mendez and the Decedent;

(b)     That Dr. Chang was aware of Mendez and the Decedent's condition;

(c)     That Dr. Chang was practicing within the limits of his expertise and/or competence;

(d)     That Dr. Chang was trained in, knew and was following the chain of command procedures;

(e)     That the other doctors and the obstetrical nurses providing medical and nursing care were sufficiently knowledgeable, experienced and capable to provide proper obstetrical nursing care to Mendez and the baby (the Decedent);

(f)     That the other doctors and the obstetrical nurses providing medical and nursing care were keeping the Dr. Chang properly informed of Mendez's and the baby's condition;

(g)     That the the other doctors and the obstetrical nurses providing medical and nursing care knew the chain of command procedures and were following them;

(h)     That Dr. Chang and the other doctors and nurses providing care were properly trained in, knew of, and followed any and all necessary and appropriate protocols, rules, regulations, procedures, policies and requirements were being followed;

(i)     That Mendez and the baby were being properly examined, treated, tested, monitored, cared for and delivered;

(j)     That the Decedent was not in severe fetal distress;

(k)     That the Decedent was not in a non-reassuring fetal status;

(l)     That an immediate non-elective C-section was not necessary;

(m)     That an episiotomy was not necessary;

(n)     That the Decedent's fetal heart rate were not a cause for concern or an immediate non-elective delivery or emergency delivery;

(o)     That the Decedent's fetal heart rate and tracing strips were being properly monitored and interpreted;

(p)     That senior ob/gyn and/or other specialists would be promptly summoned if their assistance was required;

(q)     That the baby's fetal heart rate and monitoring strips were being monitored and interpreted by qualified personnel;

(r)     That the baby's fetal heart rate and monitoring strips were being timely and/or properly monitored and interpreted;

(s)     That the staff, nurses, residents and all others providing medical and nursing were trained in and knowledgeable about all ob/gyn protocols, both medical and procedurally;

(t)     That Dr. Chang and the physician's assisting him did not need assistance, direction, guidance, monitoring, tutelage and/or oversight in treating a baby in fetal distress and/or in delivering the same;

(u)     That Dr. Chang was overseeing the care, treatment, monitoring and/or care of the Decedent baby and/or her Plaintiff mother;

(v)     That Dr. Chang and the physician's assisting him knew and/or followed all hospital protocols, policies and procedures pertaining to the care of the Decedent and/or Plaintiff Mendez;

(w)     That the mere use of a fetal monitor was enough to ascertain the health of the baby and ensure a successful delivery of a perfectly viable baby;

(x)     That trained, educated, knowledgeable and experienced doctors were in charge of Mendez and the Decedent's medical care, treatment, monitoring and delivery;

(y)     That sufficient and appropriate medical providers, doctors, nurses, residents and other medical providers were available to treat,

> monitor, care for and deliver the Decedent and Plaintiff Mendez at all times during the plaintiffs' presence at defendant hospital and while under the care of all defendant entities;
>
> (z)   Offering false excuses for reasons why the baby was not and/or could not have been safely delivered alive;
>
> (aa)  Leading Mendez to believe that anything other than medical negligence, whether gross negligence or otherwise, was at fault for the baby's demise;
>
> (bb)  Failing to order an autopsy;
>
> (cc)  preventing or obstructing an autopsy from being performed.

71.   The defendant, by and thorugh its agents and/or contractors, knew or in the exercise of reasonable care should have known that Plaintiff Mendez would justifiably rely upon these misrepresentations.

72.   Plaintiff Mendez did justifiably rely upon these misrepresentations by permitting the Defendants to continue to provide Mendez and the Decedent the substandard care which resulted in plaintiffs' injuries and damages, the loss of Plaintiff Mendez's child and the death of the Decedent.

73.   As the direct and proximate result of the aforesaid negligent and/or intentional misrepresentations, Plaintiff Mendez sustained severe physical and psychological injuries including, but not limited to, severe depression, insomnia and flashbacks, all of which have rendered Plaintiff, Mendez, sick, sore, lame, prostrate, disabled and disordered, some or all of which may continue for an indefinite time into the future.

74.   As the direct and proximate result of the aforesaid negligent and/or intentional misrepresentations, Plaintiff Mendez has been forced to endure great pain and suffering, mental anguish, loss of life's pleasures; loss of general health, strength and vitality; embarrassment, humiliation and physical pain, some or all of which are permanent and may continue for an indefinite time into the future.

75.     As a result of the aforesaid negligent and/or intentional misrepresentations, Plaintiff Mendez has been prevented her from performing her usual and customary daily activities and occupations, which may continue for an indefinite time into the future to her great detriment and loss.

76.     As the direct and proximate result of the aforesaid negligent and/or intentional misrepresentations, the Decedent sustained severe physical injuries and all of which rendered him sick, sore, lame, prostrate, disabled and disordered and forced him to suffer great mental anguish, loss of life's pleasures; loss of general health, strength and vitality; humiliation and physical pain until the time that he passed away.

77.     As a result of the aforesaid negligent and/or intentional misrepresentations, Plaintiff Mendez has been or will be obliged to receive and undergo medical attention and care and to expend various expenses for the injuries she and the Decedent have suffered and will continue to incur expenditures for an indefinite time in the future to her great detriment and loss.

78.     As a result of the aforesaid negligent and/or intentional misrepresentations, Plaintiff Mendez has sustained loss and depreciation of her earnings and earning capacity, and she may continue to endure the same for an indefinite time into the future to her great detriment and loss.

79.     The aforesaid negligent and/or intentional misrepresentations increased the risk of harm to the Decedent, Bryan Jadiel Mendez, and were a direct and substantial factor in causing and/or an actual case of his death.

        WHEREFORE, Plaintiffs demand compensatory damages from Defendants, jointly and severally, in the amount of $12,000,000, comprising $5,000,000 for Wrongful

Death Action damages, $5,000,000 for Survival Action damages, and $2,000,000 for the claims of Plantiff Mary Mendez in her own right, plus costs.

**COUNT III**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**PLAINTIFF MILETZY HERNANDEZ**
**V. DEFENDANT UNITED STATES OF AMERICA**

80.     Plaintiffs incorporate by reference all prior paragraphs the same as though set forth herein at length.

81.     As a direct and proximate result the negligent, careless, and reckless acts, omissions, and breaches of the applicable standards of care on the part of defendant's employee, Dr. Chang, and of her observations of these acts, omissions, and breaches of the applicable standards of care, of the resulting pain and suffering of Plaintiff Mendez, and of the corpse of the Decedent immediately following his death, Plaintiff Miletzy Hernandez sustained severe emotional distresss and physical and psychological injuries including, but not limited to, severe depression, insomnia and flashbacks, all of which have rendered Plaintiff Hernandez sick, sore, lame, prostrate, disabled and disordered, some or all of which may continue for an indefinite time into the future.

82.     As the direct and proximate result of the aforesaid Plaintiff Hernandez has been forced to endure great pain and suffering, mental anguish, loss of life's pleasures; loss of general health, strength and vitality; embarrassment, humiliation and physical pain, some or all of which are permanent and may continue for an indefinite time into the future.

83.     As the direct and proximate result of the aforesaid Plaintiff Hernandez has been prevented her from performing her usual and customary daily activities and occupations, which may continue for an indefinite time into the future to her great detriment and loss.

84.     As the direct and proximate result of the aforesaid Plaintiff Hernandez has been or will be obliged to receive and undergo medical attention and care and to expend various expenses for the injuries she and the Decedent have suffered and will continue to incur expenditures for an indefinite time in the future to her great detriment and loss.

85.     As the direct and proximate result of the aforesaid Plaintiff Hernandez has sustained loss and depreciation of her earnings and earning capacity, and she may continue to endure the same for an indefinite time into the future to her great detriment and loss.

WHEREFORE, Plaintiffs demand compensatory damages from the Defendants, jointly and severally, in the amount of $100,000 for the claims of Plaintiff Miltezy Hernandez, plus costs.

**COUNT IV**
**CORPORATE NEGLIGENCE**
**MARY O.  MENDEZ, as Administratrix Ad Prosequendum of the Estate of Bryan Jadiel Mendez, Deceased; MARY O. MENDEZ, in her own right; and MILETZY HERNANDEZ**
**V. DEFENDANT UNITED STATES OF AMERICA**

100.   Plaintiffs incorporate by reference all prior paragraphs the same as though set forth herein at length.

101.   The corporate negligence, malpractice, actions and inactions, both intentional and negligent, of Defendant, United States of America, through its employee, agent, and/or contractor, CAMcare, in addition to all allegations set forth above and incorporated herein, consisted of the following:

     (a)   Hiring and retaining and/or extending staff privileges to Dr. Chang, who lacked the requisite levels of knowledge, skill and dedication;

     (b)   Failing and neglecting to employ physicians with adequate experience, qualifications and skills to properly treat persons

exhibiting the signs, symptoms and complaints as were present in Mendez and Decedent;

(c)    Failing and neglecting to employ physicians with adequate experience, qualifications and skills to properly perform surgical procedures upon persons exhibiting symptoms and complaints as were exhibited by Mendez and Decedent;

(d)    Hiring and retaining Dr. Chang where same lacked the requisite levels of education, knowledge, skill and dedication;

(e)    Failing and neglecting to employ physicians who were sufficiently qualified by experience and education background to adequately treat and attend to Mendez and Decedent for the conditions then affecting Mendez and Decedent;

(f)    Hiring and retaining Dr. Chang when they knew or, in the exercise of reasonable care, should have known that he lacked the requisite levels of knowledge, skill and dedication;

(g)    Failing to institute and/or enforce adequate chain of command procedures;

(h)    Failing to properly supervise and oversee the patient care by physicians;

(i)    Failing to provide adequate supervision of its staff and employees to insure that proper practices and procedures are followed;

(j)    Failing to properly train physicians , physician assistants, nurses, and nursing assistants and/or others in any chain of command;

(k)    Failing to enact, institute, teach, promulgate, and/or enforce any chain of command policies;

(l)    Failing to enact, institute, teach, or promulgate, or if enacted or promulgated, in failing to enforce sufficient rules and regulations relating to the treatment and care of patients in the conditions of Mendez and Decedent.

102.    As the direct and proximate result of the corporate negligence of Defendant, United States of America, as aforesaid, Plaintiff, Mendez, sustained severe physical and psychological injuries including, but not limited to, severe depression, insomnia and flashbacks, all of which have rendered Plaintiff, Mendez, sick, sore, lame, prostrate, disabled and disordered, some or all of which may continue for an indefinite time into the future.

103.    As the direct and proximate result of the said Defendant's corporate negligence, Plaintiff, Mendez, has been forced to endure great pain and suffering, mental anguish, loss of life's pleasures; loss of general health, strength and vitality; embarrassment, humiliation and physical pain, some or all of which are permanent and may continue for an indefinite time into the future.

104.    As the direct and proximate result of the said Defendant's corporate negligence, Plaintiff, Mendez, has been prevented her from performing her usual and customary daily activities and occupations, which may continue for an indefinite time into the future to her great detriment and loss.

105.    As the direct and proximate result of the said Defendant's corporate negligence, the Decedent sustained severe physical injuries and all of which rendered him sick, sore, lame, prostrate, disabled and disordered and forced him to suffer great mental anguish, loss of life's pleasures; loss of general health, strength and vitality; humiliation and physical pain until the time that he passed away.

106.    As the direct and proximate result of the said Defendants's corporate negligence, Plaintiff, Mendez, has been or will be obliged to receive and undergo medical attention and care and to expend various expenses for the injuries she and the decedent have suffered and will continue to incur expenditures for an indefinite time in the future to her great detriment and loss.

107.    As the direct and proximate result of the said Defendants's corporate negligence, Plaintiff, Mendez, has sustained loss and depreciation of her earnings and earning capacity, and she may continue to endure the same for an indefinite time into the future to her great detriment and loss.

108.    As the direct and proximate result of the said Defendant's corporate negligence, Plaintiff, Miletzy Hernandez, sustained severe emotional distresss and physical and psychological injuries including, but not limited to, severe depression, insomnia and flashbacks, all of which have rendered Plaintiff, Hernandez, sick, sore, lame, prostrate, disabled and disordered, some or all of which may continue for an indefinite time into the future.

109.    As the direct and proximate result of the aforesaid Plaintiff, Hernandez, has been forced to endure great pain and suffering, mental anguish, loss of life's pleasures; loss of general health, strength and vitality; embarrassment, humiliation and physical pain, some or all of which are permanent and may continue for an indefinite time into the future.

110.    As the direct and proximate result of the aforesaid Plaintiff, Hernandez, has been prevented her from performing her usual and customary daily activities and occupations, which may continue for an indefinite time into the future to her great detriment and loss.

111.    As the direct and proximate result of the aforesaid Plaintiff, Hernandez, has been or will be obliged to receive and undergo medical attention and care and to expend various expenses for the injuries she and the decedent have suffered and will continue to incur expenditures for an indefinite time in the future to her great detriment and loss.

112.    As the direct and proximate result of the aforesaid Plaintiff, Hernandez, has sustained loss and depreciation of her earnings and earning capacity, and she may continue to endure the same for an indefinite time into the future to her great detriment and loss.

113.    The aforesaid corporate negligence of said Defendant increased the risk of harm to the Decedent, Bryan Jadiel Mendez, and was a direct and substantial factor in causing and/or an actual case of his death.

WHEREFORE, Plaintiffs demand compensatory damages from the Defendants, jointly and severally, in the amount of $12,100,000, comprising $5,000,000 for Wrongful Death action damages, $5,000,000 for Survival Action damages, $2,000,000 for the claims of Plantiff Mary Mendez in her own right, and $100,000 for the claims of Plaintiff Miletzy Hernandez in her own right, plus costs.

## COUNT V
## MEDICAL MALPRACTICE
### PLAINTIFF MARY O. MENDEZ, as Administratrix
### Ad Prosequendum of the Estate of Bryan Jadiel Mendez, Deceased,
### and MARY O. MENDEZ, in her own right
### V. DEFENDANT, CINDY AVES, M.D.

114.    Plaintiffs incorporate by reference all prior paragraphs the same as though set forth herein at length.

115.    At all relevant and material times hereto, Defendant, Dr. Aves, disregarded her duty to provide Mendez and her in utero son (hereinafter the "Decedent") with proper medical care in his capacity as a treating and/or attending obstetrician during the course of Mendez's labor, delivery and thereafter from July 20 through 21, 2010, while Mendez was a patient at Defendant, Cooper University Hospital.

116.    During the aforementioned hospitalization of Mendez and her baby, the medical/professional malpractice, negligence, carelessness, recklessness, willful and wanton conduct, omissions and failures to comply with the applicable standards of medical care and conduct evidencing defendant's reckless indifference to the rights of Mendez and the Decedent, of Defendant, Dr. Aves consisted of the following:

(a) Failing to possess and exercise the degree of knowledge, care and skill ordinarily exercised in similar cases by treating and/or attending physicians;

(b) Failing to conform to all applicable standards of medical care under the circumstances;

(c) Failing to exercise reasonable care in the diagnosis of the decedent's condition for which prompt diagnosis and treatment were critical for effective medical treatment and to save her life;

(d) Failing to properly and adequately recognize and treat Mendez's deteriorating conditions during labor in the face of obvious signs and symptoms;

(e) Failing to properly and adequately recognize and treat the decedent's deteriorating conditions in the face of obvious signs and symptoms;

(f) Failing to perform necessary medical testing;

(g) Failing to perform her duties as a treating and/or attending physician by intentionally and knowingly failing to attend to Mendez and the decedent;

(h) Failing to recognize and properly treat the decedent's non-reassuring fetal status;

(i) Failing to recognize the signs and symptoms indicative of a baby in fetal distress;

(j) Failing to appreciate the signs and symptoms of a baby in fetal distress and the possible consequences of the same;

(k) Failing to employ available appropriate methods of treatment for a baby in fetal distress;

(l) Failing to monitor, interpret, properly interpret, read, properly read and/or otherwise understand the fetal heart rate tracing strips;

(m) Failing to observe and/or know Mendez's and/or the baby's signs and symptoms of hypoxia or asphyxia;

(n) Failing to follow fetal/uterine monitoring procedures;

(o) Failing to consider all options for this delivery;

(p) Failing to effect a rapid delivery to avoid neonatal and/or maternal morbidity;

(q) Failing to timely consider any options for delivery;

(r) Failing to improve fetal oxygenation;

(s) Failing to timely perform an emergency cesarean section;

(t) Ordering or acquiescing in the use of spinal anesthesia where the need for an emergency c-section required a faster form of anesthesia;

(u) Failing to use general anesthesia, local anesthesia to the abdomen, other faster-acting anesthesia, or no anesthesia where there was an need to perform the c-section immediately;

(v) Failing to use general anesthesia, local anesthesia to the abdomen, other faster-acting anesthesia, or no anesthesia where there was an need to complete the c-section immediately;

(w) Ordering, using, or acquiescing in the use of a Pfannenstiel incision;

(x)     Ordering, using, or acquiescing in the use of a Pfannenstiel incision where a midline incision, a classical c-section, or a DeLee-Beck c-section was required;

(y)     Failing to promptly perform the abdominal and uterine incisions;

(z)     Failing to follow appropriate shoulder dystocia, umbilical cord prolapse, and abruptio placenta treatment procedures and protocols and thus failing to render proper treatment of the same;

(aa)    Failing to follow umbilical cord prolapse procedures;

(bb)    Failing to follow abruptio placenta procedures;

(cc)    Failing to properly relieve the umbilical cord compression;

(dd)    Failing to properly administer amnioinfusion;

(ee)    Failing to recognize eclampsia and to treat the same appropriately;

(ff)    Failing to recognize pre-eclampsia;

(gg)    Leaving Mendez in labor too long so as to avoid any complications and/or problems or otherwise compromising the health, safety, welfare and/or life of the mother or the baby;

(hh)    Failing to follow the recommendations, and/or protocols of the American College of Obstetrician and Gynecologists for labor fetal distress a/k/a non reassuring fetal status, and delivery;

(ii)    Failing to recognize uteroplacental insufficiency;

(jj)    Failing to recognize signs and symptoms suggesting cord compression;

(kk)    Failing to take a fetal scalp PH;

(ll)    Failing to utilize a fetal acoustic stimulator or a fetal scalp stimulator;

(mm)    Failing to take in utero resuscitative measures;

(nn)    Practicing outside her area or limits of expertise and/or competence;

(oo)    Failing to keep appropriate, accurate and/or any records pertaining to Mendez and/or the Decedent;

(pp)    Intentionally or recklessly disregarding the obvious signs and symptoms of non-reassuring fetal status, this allowing Mendez and the decedent to suffer for a prolonged period, and taking the risk of harm to Mendez and her baby's health, welfare, safety and/or life allowing the baby to die;

(qq)    Failing to follow the chain of command;

(rr)    Failing to render appropriate medical care to Mendez and the decedent;

(ss)    Failing to recognize the contraindications for the administration of medications given and thus prolonging labor and delivery and causing a substantial risk of harm to Mendez and her baby;

(tt)    Failing to examine and/or properly examine Mendez;

(uu)    Failing to improve fetal oxygenation through any number of techniques, procedures and/or deceives;

(vv)    Failing to administer appropriate and timely medications to treat Mendez and  the Decedent during the course of labor and delivery;

(ww)    Failing to make a decision which mandated operative delivery and/or as to how urgently the same should have been performed;

(xx)    Failing to call for further medical associates when needed whether from the same specialty or others, another department, another attending, the

CMO and/or any other appropriate medical personnel, staff, contractors and/or otherwise;

(yy)    Failing to consider and/or order, perform an episiotomy;

(zz)    Failing to assure appropriate medical orders and/or instructions to those in whose care the defendant left Mendez and the decedent;

(aaa)   Failing to perform any maneuvers for shoulder dystocia and to aid in the safe delivery of the baby;

(bbb)   Failing to be trained in proper labor and delivery procedures;

(ccc)   Failing to consider any and all maneuvers possible to alleviate any labor or delivery problems;

(ddd)   Failing to know how to monitor, manage and/or properly monitor and/or manage Mendez's care; labor and the delivery of her baby;

(eee)   Causing the preventable death of the Decedent and loss of Plaintiffs' child;

(fff)   Failing to know how to monitor, manage and/or properly monitor and/or manage the Decedent's care and delivery;

(ggg)   Failing to follow hospital protocols, rules, regulations, procedures, policies and requirements;

(hhh)   Failing to treat in accordance with the standards of acceptable medical care, prudence and practice;

(iii)   Failing to keep accurate and complete proper medical records;

(jjj)   Maintaining improper and/or incomplete medical records;

(kkk)   Failing to properly manage the baby's airway;

(lll)   Failing to perform a proper physical examination of the plaintiff and/or the infant;

(mmm)   Failing to properly manage the patient's physiological conditions;

(nnn)   Failing to completely, accurately and timely document all pertinent information on the patient's medical record;

(ooo)   Failing to transfer the responsibility for the care of Mendez and/or the Decedent to other qualified providers in a manner which would have assured, quality, continuity of care and patient safety;

(ppp)   Failing to monitor and/or properly monitor Mendez and the Decedent;

(qqq)   Failing to take precautions to minimize the risk of injuries and/or death to the baby and/or the mother;

(rrr)   Failing to respect and maintain the basic rights of the patient, the plaintiff;

(sss)   Failing to incorporate any hospital and/or medical standards into defendants' practice;

(ttt)   Reckless conduct causing emotional distress which renders the defendant liable as if she had acted intentionally;

(uuu)   Committing numerous and/or current deviations from the standards of care which substantially increased the risk of the baby's death;

(vvv)   Committing numerous and recurring deviations from the standards of care resulting in delayed labor, pain and suffering to the mother;

(www)   Committing numerous and recurring deviations from the standards of care which were substantial cause of Decedent's death;

(xxx)    Falling below the acceptable standards of care from an obstetrical stand-point and failing to take action to see that the Decedent was timely delivered and/or that a c-section was performed;

(yyy)    Failing to act in a timely manner so that Mendez would have had a successful delivery and the Decedent would be alive today and causing Mendez to suffer a prolonged labor and with unnecessary complications of pregnancy to incur the loss of her child;

(zzz)    Negligently and/or intentionally ignoring the signs and symptoms presented by Mendez and the *in utero* baby and failing to take all steps necessary to deliver the Decedent alive;

(aaaa)    Failing to deliver the Decedent before its condition was life threatening;

(bbbb)    Relinquishing control and care of the plaintiffs to the nurses;

(cccc)    Failing in their responsibility to promptly act in face of major risk factors during the course of delivery while the mother was under the obstetrical care of the defendants;

(dddd)    Acting in such a manner as to subsequently increase the risk of complications, injury, and of death to Mendez and/or Decedent;

(eeee)    Knowing and/or failing to recognize the mistake and or deficiencies;

(ffff)    Failing to employ, recognize available methods of treatment;

(gggg)    Failing to monitor the fetal heart rate tracing strips;

(hhhh)    Failing to properly read and/or interpret the fetal heart rate tracing strips;

(iiii)    Failing to appreciate the signs and symptoms of fetal distress and the possible consequences of the same;

(jjjj)    Failing to promptly act when noting fetal decelerations by placing an electronic fetal monitor on the baby and yet failing to recognize the sign and symptoms that the fetus was at risk for neurological injuries, other consequences and/or death;

(kkkk)    Failing to take timely and appropriate intervention before the underlying conditions, signs and symptoms of the baby caused irreversible damage and/or death;

(llll)    Failing to be properly trained interpreting FHR monitoring strips and the results;

(mmmm)    Failing to timely intervene before the fetal death occurred;

(nnnn)    Failing to administer oxygen to the Decedent;

(oooo)    Failing to prevent asphyxia and the baby's death.

(pppp)    Failing to notify the attending physician and/or other qualified senior physicians of the signs and symptoms of the decedent's fetal distress.

(qqqq)    Failing to notify the attending physician and/or other qualified senior physicians of signs and symptoms of decedent's fetal distress in a timely manner.

(rrrr)    Failing to notify the attending physician of the signs and symptoms of fetal distress.

(ssss)    Failing to notify the attending physician of the signs and symptoms of fetal distress in a timely manner.

(tttt)    Failure to appropriately consult with other medical personnel and/or providers caring for the plaintiff;

(uuuu)   Failing to know the signs and symptoms of a baby in fetal distress.

(vvvv)   Failing to know the signs and symptoms of hypoxia or asphyxia.

(wwww) Failing to know how to properly read and/or interpret fetal heart rate tracing strips;

(xxxx)   Failing to know the signs and symptoms of hypoxia or asphyxia.

(yyyy)   Failing to render appropriate medical care and treatment to Mendez and the Decedent;

(zzzz)   Failing to prevent the baby's death;

(aaaaa)  The actions and inactions of Defendant, Dr. Aves, resulted in the death of the Decedent, his failure to be delivered timely and health, and the loss of their son to Plaintiffs, Mendez, and the surviving father;

(bbbbb) Dr. Ave's delays in performing the emergency cesarean section demonstrated a reckless indifference to the health and safety of Plaintiff, Mendez, and the health, safety and survival of the Decedent.

117.   As the direct and proximate result of the aforesaid actions and/or inactions of the Defendant, Dr. Aves, Plaintiff, Mendez, sustained severe physical and psychological injuries including, but not limited to, severe depression, insomnia and flashbacks, all of which have rendered Plaintiff, Mendez, sick, sore, lame, prostrate, disabled and disordered, some or all of which may continue for an indefinite time into the future.

118.   As the direct and proximate result of the aforesaid actions and/or inactions of Defendant, Dr. Aves, Plaintiff, Mendez, has been forced to endure great pain and suffering, mental anguish, loss of life's pleasures; loss of general health, strength and vitality; embarrassment, humiliation and physical pain, some or all of which are permanent and may continue for an indefinite time into the future.

119.   As a result of the aforesaid actions and/or inactions, Plaintiff, Mendez, has been prevented her from performing her usual and customary daily activities and occupations, which may continue for an indefinite time into the future to her great detriment and loss.

120.   As the direct and proximate result of the aforesaid actions and/or inactions of Defendant, Dr. Aves, the Decedent sustained severe physical injuries and all of which rendered him sick, sore, lame, prostrate, disabled and disordered and forced him to suffer

great mental anguish, loss of life's pleasures; loss of general health, strength and vitality; humiliation and physical pain until the time that he passed away.

121.   As a result of the aforesaid actions and/or inactions, Plaintiff, Mendez, has been or will be obliged to receive and undergo medical attention and care and to expend various expenses for the injuries she and the decedent have suffered and will continue to incur expenditures for an indefinite time in the future to her great detriment and loss.

122.   As a result of the aforesaid actions and/or inactions of Defendant, Dr. Aves, Plaintiff, Mendez, has sustained loss and depreciation of her earnings and earning capacity, and she may continue to endure the same for an indefinite time into the future to her great detriment and loss.

123.   The aforesaid wrongful acts and omissions of Defendant, Dr. Aves, increased the risk of harm to the Decedent, Bryan Jadiel Mendez, and were a direct and substantial factor in causing and/or an actual case of his death.

WHEREFORE, Plaintiffs demand compensatory damages from the Defendants, jointly and severally, in the amount of $12,000,000, comprising $5,000,000 for Wrongful Death action damages, $5,000,000 for Survival Action damages, and $2,000,000 for the claims of Plantiff Mary Mendez in her own right, plus punitive damages against Defendant Cindy Aves, M.D., plus costs.

**COUNT VI**
**MEDICAL MALPRACTICE**
**PLAINTIFF MARY O. MENDEZ, as Administratrix**
**Ad Prosequendum of the Estate of Bryan Jadiel Mendez, Deceased,**
**and MARY O. MENDEZ, in her own right**
**V. DEFENDANT, KRISTY CRAWFORD, D.O.**

124   Plaintiffs incorporate by reference all prior paragraphs the same as though set forth herein at length.

125    At all relevant and material times hereto, Defendant, Dr. Crawford, disregarded his duty to provide Mendez and her in utero son (hereinafter the "Decedent") with proper medical care in his capacity as a treating and/or attending physician during the course of Mendez's labor, delivery and thereafter from July 20 through 21, 2010, while Mendez was a patient at Defendant, Cooper University Hospital.

126    During the aforementioned hospitalization of Mendez and her baby, the medical/professional malpractice, negligence, carelessness, recklessness, willful and wanton conduct, omissions and failures to comply with the applicable standards of medical care and conduct evidencing defendant's reckless indifference to the rights of Mendez and the Decedent, of Defendant, Dr. Crawford, consisted of the following:

(a)    Failing to possess and exercise the degree of knowledge, care and skill ordinarily exercised in similar cases by treating and/or attending physicians;

(b)    Failing to conform to all applicable standards of medical care under the circumstances;

(c)    Failing to exercise reasonable care in the diagnosis of the decedent's condition for which prompt diagnosis and treatment were critical for effective medical treatment and to save her life;

(d)    Failing to properly and adequately recognize and treat Mendez's deteriorating conditions during labor in the face of obvious signs and symptoms;

(e)    Failing to properly and adequately recognize and treat the decedent's deteriorating conditions in the face of obvious signs and symptoms;

(f)    Failing to perform necessary medical testing;

(g)    Failing to perform her duties as a treating and/or attending physician by intentionally and knowingly failing to attend to Mendez and the decedent;

(h)    Failing to recognize and properly treat the decedent's non-reassuring fetal status;

(i)    Failing to recognize the signs and symptoms indicative of a baby in fetal distress;

(j)    Failing to appreciate the signs and symptoms of a baby in fetal distress and the possible consequences of the same;

(k)    Failing to employ available appropriate methods of treatment for a baby in fetal distress;

(l)    Failing to monitor, interpret, properly interpret, read, properly read and/or otherwise understand the fetal heart rate tracing strips;

(m)     Failing to observe and/or know Mendez's and/or the baby's signs and symptoms of hypoxia or asphyxia;

(n)     Failing to follow fetal/uterine monitoring procedures;

(o)     Failing to consider all options for this delivery;

(p)     Failing to effect a rapid delivery to avoid neonatal and/or maternal morbidity;

(q)     Failing to timely consider any options for delivery;

(r)     Failing to improve fetal oxygenation;

(s)     Failing to timely perform an emergency cesarean section;

(t)     Ordering or acquiescing in the use of spinal anesthesia where the need for an emergency c-section required a faster form of anesthesia;

(u)     Failing to use general anesthesia, local anesthesia to the abdomen, other faster-acting anesthesia, or no anesthesia where there was an need to perform the c-section immediately;

(v)     Failing to use general anesthesia, local anesthesia to the abdomen, other faster-acting anesthesia, or no anesthesia where there was an need to complete the c-section immediately;

(w)     Ordering, using, or acquiescing in the use of a Pfannenstiel incision;

(x)     Ordering, using, or acquiescing in the use of a Pfannenstiel incision where a midline incision, a classical c-section, or a DeLee-Beck c-section was required;

(y)     Failing to promptly perform the abdominal and uterine incisions;

(z)     Failing to follow appropriate shoulder dystocia, umbilical cord prolapse, and abruptio placenta treatment procedures and protocols and thus failing to render proper treatment of the same;

(aa)    Failing to follow umbilical cord prolapse procedures;

(bb)    Failing to follow abruptio placenta procedures;

(cc)    Failing to properly relieve the umbilical cord compression;

(dd)    Failing to properly administer amnioinfusion;

(ee)    Failing to recognize eclampsia and to treat the same appropriately;

(ff)    Failing to recognize pre-eclampsia;

(gg)    Leaving Mendez in labor too long so as to avoid any complications and/or problems or otherwise compromising the health, safety, welfare and/or life of the mother or the baby;

(hh)    Failing to follow the recommendations, and/or protocols of the American College of Obstetrician and Gynecologists for labor fetal distress a/k/a non reassuring fetal status, and delivery;

(ii)    Failing to recognize uteroplacental insufficiency;

(jj)    Failing to recognize signs and symptoms suggesting cord compression;

(kk)    Failing to take a fetal scalp PH;

(ll)    Failing to utilize a fetal acoustic stimulator or a fetal scalp stimulator;

(mm)    Failing to take *in utero* resuscitative measures;

(nn)    Practicing outside her area or limits of expertise and/or competence;

(oo)    Failing to keep appropriate, accurate and/or any records pertaining to Mendez and/or the Decedent;

(pp)     Intentionally or recklessly disregarding the obvious signs and symptoms of nonreassuring fetal status, this allowing Mendez and the decedent to suffer for a prolonged period, and taking the risk of harm to Mendez and her baby's health, welfare, safety and/or life allowing the baby to die;

(qq)     Failing to follow the chain of command;

(rr)     Failing to render appropriate medical care to Mendez and the decedent;

(ss)     Failing to recognize the contraindications for the administration of medications given and thus prolonging labor and delivery and causing a substantial risk of harm to Mendez and her baby;

(tt)     Failing to examine and/or properly examine Mendez;

(uu)     Failing to improve fetal oxygenation through any number of techniques, procedures and/or deceives;

(vv)     Failing to administer appropriate and timely medications to treat Mendez and   the Decedent during the course of labor and delivery;

(ww)    Failing to make a decision which mandated operative delivery and/or as to how urgently the same should have been performed;

(xx)     Failing to call for further medical associates when needed whether from the same specialty or others, another department, another attending, the CMO and/or any other appropriate medical personnel, staff, contractors and/or otherwise;

(yy)     Failing to consider and/or order, perform an episiotomy;

(zz)     Failing to assure appropriate medical orders and/or instructions to those in whose care the defendant left Mendez and the decedent;

(aaa)    Failing to perform any maneuvers for shoulder dystocia and to aid in the safe delivery of the baby;

(bbb)    Failing to be trained in proper labor and delivery procedures;

(ccc)    Failing to consider any and all maneuvers possible to alleviate any labor or delivery problems;

(ddd)    Failing to know how to manage and/or properly manage Mendez's care, labor and the delivery of her baby;

(eee)    Causing the preventable death of the Decedent and loss of Plaintiffs' child;

(fff)     Failing to know how to monitor, manage and/or properly monitor and/or manage the Decedent's care and delivery;

(ggg)    Failing to follow hospital protocols, rules, regulations, procedures, policies and requirements;

(hhh)    Failing to treat in accordance with the standards of acceptable medical care, prudence and practice;

(iii)     Failing to keep accurate and complete proper medical records;

(jjj)     Maintaining improper and/or incomplete medical records;

(kkk)    Failing to properly manage the baby's airway;

(lll)     Failing to perform a proper physical examination of the plaintiff and/or the infant;

(mmm)  Failing to properly manage the patient's physiological conditions;

(nnn)    Failing to completely, accurately and timely document all pertinent information on the patient's medical record;

(ooo)   Failing to transfer the responsibility for the care of Mendez and/or the Decedent to other qualified providers in a manner which would have assured, quality, continuity of care and patient safety;

(ppp)   Failing to monitor and/or properly monitor Mendez and the Decedent;

(qqq)   Failing to take precautions to minimize the risk of injuries and/or death to the baby and/or the mother;

(rrr)   Failing to respect and maintain the basic rights of the patient, the plaintiff;

(sss)   Failing to incorporate any hospital and/or medical standards into defendants' practice;

(ttt)   Reckless conduct causing emotional distress which renders the defendant liable as if he had acted intentionally;

(uuu)   Committing numerous and/or current deviations from the standards of care which substantially increased the risk of the baby's death;

(vvv)   Committing numerous and recurring deviations from the standards of care resulting in delayed labor, pain and suffering to the mother;

(www)   Committing numerous and recurring deviations from the standards of care which were substantial cause of Decedent's death;

(xxx)   Falling below the acceptable standards of care from an obstetrical stand-point and failing to take action to see that the Decedent was timely delivered and/or that a c-section was performed;

(yyy)   Failing to act in a timely manner so that Mendez would have had a successful delivery and the Decedent would be alive today and causing Mendez to suffer a prolonged labor and with unnecessary complications of pregnancy to incur the loss of her child;

(zzz)   Negligently and/or intentionally ignoring the signs and symptoms presented by Mendez  and the *in utero* baby and failing to take all steps necessary to deliver the Decedent alive;

(aaaa)  Failing to deliver the Decedent before its condition was life threatening;

(bbbb)  Relinquishing control and care of the plaintiffs as "captain of the ship" to an unqualified resident/doctor and/or the nurses;

(cccc)  Failing in her responsibility to promptly act in face of major risk factors during the course of delivery while the mother was under the obstetrical care of the defendants;

(dddd)  Acting in such a manner as to subsequently increase the risk of complications, injury, and of death  to Mendez and/or Decedent;

(eeee)  Knowing and/or failing to recognize the mistake and or deficiencies;

(ffff)  Failing to employ, recognize available methods of treatment;

(gggg)  Failing to monitor the fetal heart rate tracing strips;

(hhhh)  Failing to properly read and/or interpret the fetal heart rate tracing strips;

(iiii)  Failing to appreciate the signs and symptoms of fetal distress and the possible consequences of the same;

(jjjj)  Failing to promptly act when noting fetal decelerations by placing an electronic fetal monitor on the baby and yet failing to recognize the sign and symptoms that the fetus was at risk for neurological injuries, other consequences and/or death;

(kkkk)   Failing to take timely and appropriate intervention before the underlying conditions, signs and symptoms of the baby caused irreversible damage and/or death;

(llll)   Failing to be properly trained interpreting FHR monitoring strips and the results;

(mmmm)   Failing to timely intervene before the fetal death occurred;

(nnnn)   Failing to administer oxygen to the Decedent;

(oooo)   Failing to prevent asphyxia and the baby's death.

(pppp)   Failing to notify the attending physician and/or other qualified senior physicians of the signs and symptoms of the decedent's fetal distress.

(qqqq)   Failing to notify the attending physician and/or other qualified senior physicians of signs and symptoms of decedent's fetal distress in a timely manner.

(rrrr)   Failing to notify the attending physician of the signs and symptoms of fetal distress.

(ssss)   Failing to notify the attending physician of the signs and symptoms of fetal distress in a timely manner.

(tttt)   Failure to appropriately ·consult with other medical personnel and/or providers caring for the plaintiff;

(uuuu)   Failing to know the signs and symptoms of a baby in fetal distress.

(vvvv)   Failing to know the signs and symptoms of hypoxia or asphyxia.

(wwww) Failing to know how to properly read and/or interpret fetal heart rate tracing strips;

(xxxx)   Failing to know the signs and symptoms of hypoxia or asphyxia.

(yyyy)   Failing to render appropriate medical care and treatment to Mendez and the Decedent;

(zzzz)   Failing to prevent the baby's death;

(aaaaa)   The actions and inactions of Defendant, Dr. Crawford, resulted in the death of the Decedent, his failure to be delivered timely and health, and the loss of their son to Plaintiffs, Mendez, and the surviving father;

(bbbbb)   Dr. Crawford's delays in performing the emergency cesarean section demonstrated a reckless indifference to the health and safety of Plaintiff, Mendez, and the health, safety and survival of the Decedent.

127. As the direct and proximate result of the aforesaid actions and/or inactions of the Defendant, Dr. Crawford, Plaintiff, Mendez, sustained severe physical and psychological injuries including, but not limited to, severe depression, insomnia and flashbacks, all of which have rendered Plaintiff, Mendez, sick, sore, lame, prostrate, disabled and disordered, some or all of which may continue for an indefinite time into the future.

128.   As the direct and proximate result of the aforesaid actions and/or inactions of Defendant, Dr. Crawford, Plaintiff, Mendez, has been forced to endure great pain and

suffering, mental anguish, loss of life's pleasures; loss of general health, strength and vitality; embarrassment, humiliation and physical pain, some or all of which are permanent and may continue for an indefinite time into the future.

129.    As a result of the aforesaid actions and/or inactions, Plaintiff, Mendez, has been prevented her from performing her usual and customary daily activities and occupations, which may continue for an indefinite time into the future to her great detriment and loss.

130.    As the direct and proximate result of the aforesaid actions and/or inactions of Defendant, Dr. Crawford, the Decedent sustained severe physical injuries and all of which rendered him sick, sore, lame, prostrate, disabled and disordered and forced him to suffer great mental anguish, loss of life's pleasures; loss of general health, strength and vitality; humiliation and physical pain until the time that he passed away.

131.    As a result of the aforesaid actions and/or inactions, Plaintiff, Mendez, has been or will be obliged to receive and undergo medical attention and care and to expend various expenses for the injuries she and the decedent have suffered and will continue to incur expenditures for an indefinite time in the future to her great detriment and loss.

132.    As a result of the aforesaid actions and/or inactions of Defendant, Dr. Crawford, Plaintiff, Mendez, has sustained loss and depreciation of her earnings and earning capacity, and she may continue to endure the same for an indefinite time into the future to her great detriment and loss.

133.    The aforesaid wrongful acts and omissions of Defendant, Dr. Crawford, increased the risk of harm to the Decedent, Bryan Jadiel Mendez, and were a direct and substantial factor in causing and/or an actual case of his death.

WHEREFORE, Plaintiffs demand compensatory damages from the Defendants, jointly and severally, in the amount of $12,000,000, comprising $5,000,000 for Wrongful Death action damages, $5,000,000 for Survival Action Damages, and $2,000,000 for the claims of Plantiff Mary Mendez in her own right, plus punitive damages against Defendant Kristy Crawford, D.O., plus costs.

**COUNT VII**
**MEDICAL MALPRACTICE**
**PLAINTIFF MARY O. MENDEZ, as Administratrix**
**Ad Prosequendum of the Estate of Bryan Jadiel Mendez, Deceased,**
**and MARY O.  MENDEZ, in her own right**
**V. DEFENDANT, DHIREN SONI, D.O.**

134.    Plaintiffs incorporate by reference all prior paragraphs the same as though set forth herein at length.

135.    At all relevant and material times hereto, Defendants. Dr. Soni. disregarded his duty to provide Mendez and her in utero son with proper medical care in his capacity as an anesthesiologist during the course of Mendez's emergency cesarean section on July 21, 2012.

136.    During the aforementioned operation, the medical/professional malpractice, negligence, carelessness, recklessness, willful and wanton conduct, and conduct evidencing defendant's reckless indifference to the rights of Mendez and the Decedent of Defendant, Dr. Soni, consisted of the following:

    (a)    Failing to possess and exercise the degree of knowledge, care and skill ordinarily exercised in similar cases by ob/gyn physicians;

    (b)    Failing to possess and exercise the degree of knowledge, care and skill ordinarily exercised in similar cases by ob/gyn physicians;

    (c)    Failing to conform to all applicable standards of medical care under the circumstances;

    (d)    Failing to exercise reasonable care in the diagnosis of the decedent's condition for which prompt diagnosis and treatment were critical for effective medical treatment and to save the life of her baby;

      (e)      Ordering and/or administering spinal anesthesia where the emergent circumstances required a faster form of anesthesia such as general anesthesia and/or local anesthesia of the abdomen;

      (f)      Administering spinal anesthesia at the wrong spinal level;

      (g)      Failing to administer anesthesia in a timely manner;

      (h)      Administering inadequate dose(s) of anesthesia;

      (i)      Otherwise improperly administering anesthesia;

      (j)      Failing to order or administer a faster form of anesthesia such as general anesthesia and/or local anesthesia of the abdomen when the circumstances requiring a cesarean section became increasingly emergent.

137. As the direct and proximate result of the aforesaid actions and/or inactions of the Defendant, Dr. Soni, Plaintiff, Mendez, sustained severe physical and psychological injuries including, but not limited to, severe depression, insomnia and flashbacks, all of which have rendered Plaintiff, Mendez, sick, sore, lame, prostrate, disabled and disordered, some or all of which may continue for an indefinite time into the future.

138. As the direct and proximate result of the aforesaid actions and/or inactions of Defendant, Dr. Soni, Plaintiff, Mendez, has been forced to endure great pain and suffering, mental anguish, loss of life's pleasures; loss of general health, strength and vitality; embarrassment, humiliation and physical pain, some or all of which are permanent and may continue for an indefinite time into the future.

139. As a result of the aforesaid actions and/or inactions, Plaintiff, Mendez, has been prevented her from performing her usual and customary daily activities and occupations, which may continue for an indefinite time into the future to her great detriment and loss.

140. As the direct and proximate result of the aforesaid actions and/or inactions of Defendant, Dr. Soni, the Decedent sustained severe physical injuries and all of which rendered him sick, sore, lame, prostrate, disabled and disordered and forced him to suffer great mental anguish, loss of life's pleasures; loss of general health, strength and vitality; humiliation and physical pain until the time that he passed away.

141.    As a result of the aforesaid actions and/or inactions, Plaintiff, Mendez, has been or will be obliged to receive and undergo medical attention and care and to expend various expenses for the injuries she and the decedent have suffered and will continue to incur expenditures for an indefinite time in the future to her great detriment and loss.

142.    As a result of the aforesaid actions and/or inactions of Defendant, Dr. Soni, Plaintiff, Mendez, has sustained loss and depreciation of her earnings and earning capacity, and she may continue to endure the same for an indefinite time into the future to her great detriment and loss.

143.    The aforesaid wrongful acts and omissions of Defendant, Dr. Soni, increased the risk of harm to the Decedent, Bryan Jadiel Mendez, and were a direct and substantial factor in causing and/or an actual case of his death.

WHEREFORE, Plaintiffs demand compensatory damages from the Defendants, jointly and severally, in the amount of $12,000,000, comprising $5,000,000 for Wrongful Death action damages, $5,000,000 for Survival Action Damages, and $2,000,000 for the claims of Plantiff Mary Mendez in her own right, plus costs.

**COUNT VIII**
**NURSING/PROFESSIONAL MALPRACTICE**
**PLAINTIFF MARY O. MENDEZ, as Administratrix**
**Ad Prosequendum of the Estate of Bryan Jadiel Mendez, Deceased,**
**and MARY O. MÉNDEZ, in her own right**
**V. DEFENDANTS, BERYL KELLY, R.N.; CHRISTINE WARD, R.N.; BARBARA**
**MURPHY, R.N.; JOANNE HEALEY, R.N.; MARGARET NECE, LYNNE**
**HELMES, R.N.; MS./MR. PROFICO, R.N.; AND MS./MR. ALICE, R.N.**

154.    Plaintiffs incorporate by reference all prior paragraphs the same as though set forth herein at length.

155.    At all relevant and material times hereto, Defendants, Beryl Kelley, R.N., Christine Ward, R.N., Barbara Murphy, R.N., Joanne Healey, R.N., Margaret Nece, R.N.,

Lynn Helmes, R.N., Ms./Mr. Profico, R.N., and Ms./Mr. Alice, R.N., (hereinafter the "Obstetrical Nurses") disregarded their duty to provide Mendez and her in utero son, the Decedent, with proper nursing care during the course of Mendez's labor, delivery and thereafter from July 20 through July 21, 2010, while Mendez was at Defendantz, Cooper University Hospital.

156.   During the aforementioned hospitalization of Mendez and her baby, the nursing/professional malpractice, negligence, carelessness, recklessness, willful and wanton conduct, and conduct evidencing defendants' reckless indifference to the rights of Mendez and the Decedent of the Defendant Obstetrical Nurses consisted of the following:

(a)   Failing to possess and exercise the degree of nursing knowledge, care and skill ordinarily exercised in similar cases by nursing supervisors and nurses;

(b)   Failing to conform to the applicable standards of nursing and medical care under the circumstances;

(c)   Failing to exercise reasonable care in collecting and reporting information to assist the Physicians in the diagnosis of Decedent's condition for which prompt diagnosis and treatment were critical for effective medical treatment and to save her life;

(d)   Failing to properly and adequately recognize, report to the Physicians and provide nursing care for Mendez's deteriorating conditions during labor in the face of obvious signs and symptoms;

(e)   Failing to properly and adequately recognize, report to the Physicians and provide nursing care for Decedent's deteriorating conditions in the face of obvious signs and symptoms;

(f)   Failing to report timely or at all to the Physicians the Decedent's non-reassuring heart rates;

(g)   Failing to continuously, or even repeatedly, monitor the Decedent's heart rate in the operating room;

(h)   Failing to perform necessary testing;

(i)   Failing to perform her nursing duties by intentionally and knowingly failing to attend to Mendez and Decedent;

(j)   Failing to recognize the signs and symptoms of Decedent's non-reassuring fetal status and properly report and treat same to her supervisor;

(k)   Failing to recognize the sign and symptoms indicative of a baby in fetal distress;

48

(l)    Failing to appreciate the signs and symptoms of a baby in fetal distress and the possible consequences of the same;

(m)    Failing to employ available appropriate methods of nursing care for a baby in fetal distress;

(n)    Failing to monitor, interpret, properly interpret, read, properly read and/or otherwise understand the fetal heart rate tracing strips;

(o)    Failing to observe and/or know Mendez's and/or the baby signs and symptoms of hypoxia or asphyxia;

(p)    Failing to follow fetal/uterine monitoring procedures;

(q)    Failing to consider and call to the Physicians' attention all options for delivery and the timeliness of the same;

(r)    Failing to assist in effecting a rapid delivery to avoid neonatal and/or maternal morbidity;

(s)    Failing to timely consider and call to the attention of the resident, the attending physician, and/or any other qualified senior physicians and options for delivery;

(t)    Failing to timely consider and call to the attention of the resident, the attending physician, and/or any other qualified senior physicians the need for a timely delivery of the baby;

(u)    Failing to improve fetal oxygenation;

(v)    Failing to timely consider and call to the attention of the resident, the attending physician, and/or any other qualified senior physicians the need for an emergency cesarean section;

(w)    Failing to follow and/or be knowledgeable about appropriate shoulder dystocia, umbilical cord prolapsed, abruption placenta treatment procedures and umbilical cord compression procedures and protocols and thus failing to render proper treatment of the same;

(x)    Failing to properly administer amnioinfusion;

(y)    Failing to recognize eclampsia and to provide appropriate nursing care for the same;

(z)    Participating in leaving Mendez in labor too long, creating complications and/or problems or otherwise compromising the health, safety, welfare and/or life of the mother of her baby, the Decedent ;

(aa)    Failing to take a fetal scalp PH;

(bb)    Failing to utilize a fetal acoustic stimulator or a fetal scalp stimulator;

(cc)    Failing to take and/or know in utero resuscitative measures;

(dd)    Practicing outside her areas or limits of nursing competence;

(ee)    Failing to properly train the other nurses and the nursing assistants who participated in the care of mother or her baby, the Decedent;

(ff)    Intentionally or recklessly disregarding the obvious signs and symptoms of non-reassuring fetal status and prolonged labor, this intentionally or recklessly permitting Mendez and the decedent to suffer for a prolonged period and risking highly probable

substantial harm to Mendez and to her baby's health, welfare, safety and/or life;

(gg)   Failing to follow the chain of command and utilize the chain of command protocol;

(hh)   Failing to render appropriate nursing care to Mendez and Decedent;

(ii)   Failing to recognize the contraindications for the administration of medications given and thus prolonging labor and delivery and causing and increasing the substantial risk of substantial harm and/or death to Mendez and her baby;

(jj)   Failing to examine and/or properly examine Mendez and/or baby;

(kk)   Failing to improve fetal oxygenation through any of appropriate and available techniques, procedures and/or devices;

(ll)   Failing to administer appropriate and timely medications to Mendez for the benefit of Mendez and her baby, the Decedent, during the course of labor and delivery;

(mm)   Failing to make a decision which mandated operative delivery and/or as to how urgently the same should have been performed;

(nn)   Failing to call for further medical or nursing personnel when needed, whether from the same specialty or others, another department, an attending, the CMO and/or any other appropriate medical personnel, staff, contractors and/or otherwise;

(oo)   Failing to consider and/or order or perform an episiotomy;

(pp)   Failing to deliver to the Physicians the appropriate medical orders and/or instructions to those in whose care the defendants left Mendez and the decedent;

(qq)   Failing to perform any maneuvers for shoulder dystocia and to aid in the safe delivery of the baby;

(rr)   Failing to be trained in proper labor and delivery procedures;

(ss)   Failing to consider any and all maneuvers possible to alleviate any labor or delivery problems;

(tt)   Failing to know how to assist in Mendez's care, her labor and the delivery of her baby;

(uu)   Causing the preventable death of the Decedent and loss of Plaintiffs' child;

(vv)   Failing to know, understand, and/or be educated in how to assist in managing and/or properly managing the Decedent's care and delivery;

(ww)   Failing to follow hospital protocols, rules, regulations, procedures, policies and requirements;

(xx)   Failing to provide nursing care in accordance with the standards of acceptable nursing care, prudence and practice;

(yy)   Failing to properly manage the baby's airway;

(zz)   Failing to perform a proper physical examination of the plaintiff and/or the infant;

(aaa)   Failing to properly help the Nurse Supervisors, Nurses and Physicians manage the patient's physiological conditions;

(bbb)   Failing to completely, accurately and timely document all pertinent information on the patient's medical record;

(ccc)   Failing to transfer the responsibility for the care of Mendez and/or the Decedent to other nurses and medical providers in a manner which would have assured, quality, continuity of care and patient safety;

(ddd)   Failing to monitor and/or properly monitor Mendez and the Decedent;

(eee)   Failing to take precautions to minimize the risk of injuries and/or death to the baby and/or the mother;

(fff)   Failing to respect and maintain the basic rights of the patient, the plaintiff;

(ggg)   Failing to incorporate any hospital and/or nursing standards into defendants' nursing care of plaintiff and her baby, the Decedent;

(hhh)   Reckless conduct causing emotional distress which renders the defendant liable as if he had acted intentionally;

(iii)   Committing numerous and/or current deviations from the standards of nursing care which substantially increased the risk of the baby's death;

(jjj)   Committing numerous and recurring deviations from the standards of nursing care resulting in delayed labor, pain and suffering to the mother;

(kkk)   Committing numerous and recurring deviations from the standards of nursing care which were substantial cause of Decedent's death;

(lll)   Falling below the acceptable standards of care from an obstetrical nursing standpoint and failing during labor and/or delivery including, but not limited to, taking action to see that the Decedent was timely delivered and/or that a c-section was performed;

(mmm) Failing to act in a timely manner so that Mendez would have had a successful delivery and the Decedent would be alive today causing Mendez to suffer a prolonged labor and with unnecessary complications of pregnancy to incur the loss of her child;

(nnn)   Negligently and/or intentionally ignoring the signs and symptoms presented by Mendez and the in utero baby and failing to take all steps necessary to deliver the Decedent alive;

(ooo)   Failing to deliver the Decedent before its condition was life threatening;

(ppp)   Failing in their responsibility to promptly act in the face of major risk factors during the course of delivery while the mother was under the obstetrical care of the defendants;

(qqq)   Acting in such a manner as to increase the risk of complications, injury, and of death to Mendez and/or Decedent;

(rrr)   Failing to employ, recognize available methods of nursing care;

(sss)   Failing to monitor the fetal heart rate tracing strips;

(ttt)   Failing to properly read and/or interpret the fetal heart rate tracing strips;

(uuu)   Failing to appreciate the signs and symptoms of fetal distress and the possible consequences of the same;

(vvv)   Failing to promptly act when noting fetal decelerations by placing an electronic fetal monitor on the baby and yet failing to recognize the signs and symptoms that the fetus was at risk for neurological injuries, other consequences and/or death;

(www)  Failing to take timely and appropriate intervention before the underlying conditions, signs and symptoms of the baby caused irreversible damage and/or death;

(xxx)   Failing to be properly trained interpreting FHR monitoring strips and the results;

(yyy)   Failing to timely intervene before the fetal death occurred;

(zzz)   Failing to administer oxygen to the Decedent;

(aaaa)  Failing to prevent asphyxia and the baby's death;

(bbbb)  Failing to notify the nurses, including nurse supervisors, and the Physicians of the signs and symptoms of fetal distress in a timely manner;

(cccc)  Failure to appropriately consult with other medical personnel and/or providers caring for the plaintiff;

(dddd)  Failing to know the signs and symptoms of hypoxia or asphyxia;

(eeee)  Failing to know how to properly read and/or interpret fetal heart rate tracing strips;

(ffff)   Failing to monitor and/or properly monitor Mendez and her baby, the Decedent and/or properly during labor;

(gggg)  Failing to be educated in, know and/or follow the chain of command, as well as all Defendants' protocols, procedures, rules, and regulation.

157.   As the direct and proximate result of the aforesaid actions and/or inactions of the Defendant Obstetrical Nurses, Plaintiff, Mendez, sustained severe physical and psychological injuries including, but not limited to, severe depression, insomnia and flashbacks, all of which have rendered Plaintiff, Mendez, sick, sore, lame, prostrate, disabled and disordered, some or all of which may continue for an indefinite time into the future.

158.   As the direct and proximate result of the aforesaid actions and/or inactions of the Defendant Obstetrical Nurses, Plaintiff, Mendez, has been forced to endure great pain

and suffering, mental anguish, loss of life's pleasures; loss of general health, strength and vitality; embarrassment, humiliation and physical pain, some or all of which are permanent and may continue for an indefinite time into the future.

159.    As a result of the aforesaid actions and/or inactions, Plaintiff, Mendez, has been prevented her from performing her usual and customary daily activities and occupations, which may continue for an indefinite time into the future to her great detriment and loss.

160.    As the direct and proximate result of the aforesaid actions and/or inactions of the Defendant Obstetrical Nurses, the Decedent sustained severe physical injuries and all of which rendered him sick, sore, lame, prostrate, disabled and disordered and forced him to suffer great mental anguish, loss of life's pleasures; loss of general health, strength and vitality; humiliation and physical pain until the time that he passed away.

161.    As a result of the aforesaid actions and/or inactions, Plaintiff, Mendez, has been or will be obliged to receive and undergo medical attention and care and to expend various expenses for the injuries she and the decedent have suffered and will continue to incur expenditures for an indefinite time in the future to her great detriment and loss.

162.    As a result of the aforesaid actions and/or inactions of the Defenadant Obstetrical Nurses, Plaintiff, Mendez, has sustained loss and depreciation of her earnings and earning capacity, and she may continue to endure the same for an indefinite time into the future to her great detriment and loss.

163.    The aforesaid wrongful acts and omissions of the Defendant Obstetrical Nurses increased the risk of harm to the Decedent, Bryan Jadiel Mendez, and were a direct and substantial factor in causing and/or an actual case of his death.

WHEREFORE, Plaintiffs demand compensatory damages from the Defendants, jointly and severally, in the amount of $12,000,000, comprising $5,000,000 for Wrongful Death action damages, $5,000,000 for Survival Action Damages, and $2,000,000 for the claims of Plantiff Mary Mendez in her own right, plus punitive damages against the Defendant Obstetrical Nurses, plus costs.

**COUNT IX**
**NURSING/PROFESSIONAL MALPRACTICE**
**PLAINTIFF MARY O. MENDEZ, as Administratrix**
**Ad Prosequendum of the Estate of Bryan Jadiel Mendez, Deceased,**
**and MARY O.  MENDEZ, in her own right**
**V. DEFENDANT, SUZANNE PANAYIOTOU, CRNA**

164.    Plaintiffs incorporate by reference all prior paragraphs the same as though set forth herein at length.

165.    At all relevant and material times hereto, Defendant, Suzanne Panayitou, CRNA (hereinafter the "Panayiotou") disregarded her duty to provide Mendez and her in utero son, the Decedent, with proper CRNA nursing care during the course of Mendez's delivery by c-section on July 21, 2010, while Mendez was at Defendantz, Cooper University Hospital.

166.    During the aforementioned c-section delivelry, the nursing/professional malpractice, negligence, carelessness, recklessness, willful and wanton conduct, and conduct evidencing defendants' reckless indifference to the rights of Mendez and the Decedent of the Defendant Panayiotou consisted of the following:

       (a)     Failing to possess and exercise the degree of knowledge, care and skill ordinarily exercised in similar cases by a CRNA;

       (b)     Failing to possess and exercise the degree of knowledge, care and skill ordinarily exercised in similar cases by CRNAs;

       (c)     Failing to conform to all applicable standards of CRNA care under the circumstances;

(d)     Failing to exercise reasonable care in the diagnosis of the decedent's condition for which prompt diagnosis and treatment were critical for effective medical treatment and to save the life of her baby;

(e)     Ordering, recommending, administering or acquiescing in the use of spinal anesthesia where the emergent circumstances required a faster form of anesthesia such as general anesthesia and/or local anesthesia of the uterus;

(f)     Administering spinal anesthesia at the wrong spinal level;

(g)     Failing to administer anesthesia in a timely manner;

(h)     Administering inadequate dose(s) of anesthesia;

(i)     Otherwise improperly administering anesthesia;

(j)     Failing to order, recommend and/or administer a faster form of anesthesia such as general anesthesia and/or local anesthesia of the uterus when the circumstances requiring a cesarean section became increasingly emergent.

167.    As the direct and proximate result of the aforesaid actions and/or inactions of Defendant Panayiotou, Plaintiff, Mendez, sustained severe physical and psychological injuries including, but not limited to, severe depression, insomnia and flashbacks, all of which have rendered Plaintiff, Mendez, sick, sore, lame, prostrate, disabled and disordered, some or all of which may continue for an indefinite time into the future.

168.    As the direct and proximate result of the aforesaid actions and/or inactions of Defendant Panayiotou, Plaintiff, Mendez, has been forced to endure great pain and suffering, mental anguish, loss of life's pleasures; loss of general health, strength and vitality; embarrassment, humiliation and physical pain, some or all of which are permanent and may continue for an indefinite time into the future.

169.    As a result of the aforesaid actions and/or inactions, Plaintiff, Mendez, has been prevented her from performing her usual and customary daily activities and occupations, which may continue for an indefinite time into the future to her great detriment and loss.

170.    As the direct and proximate result of the aforesaid actions and/or inactions of Defendant Panayiotou, the Decedent sustained severe physical injuries and all of which rendered him sick, sore, lame, prostrate, disabled and disordered and forced him to suffer

great mental anguish, loss of life's pleasures; loss of general health, strength and vitality; humiliation and physical pain until the time that he passed away.

171.    As a result of the aforesaid actions and/or inactions, Plaintiff, Mendez, has been or will be obliged to receive and undergo medical attention and care and to expend various expenses for the injuries she and the decedent have suffered and will continue to incur expenditures for an indefinite time in the future to her great detriment and loss.

172.    As a result of the aforesaid actions and/or inactions of the Defenadant Obstetrical Nurses, Plaintiff, Mendez, has sustained loss and depreciation of her earnings and earning capacity, and she may continue to endure the same for an indefinite time into the future to her great detriment and loss.

173.    The aforesaid wrongful acts and omissions of Defendant Panayiotou increased the risk of harm to the Decedent, Bryan Jadiel Mendez, and were a direct and substantial factor in causing and/or an actual case of his death.

WHEREFORE, Plaintiffs demand compensatory damages from the Defendants, jointly and severally, in the amount of $12,000,000, comprising $5,000,000 for Wrongful Death action damages, $5,000,000 for Survival Action Damages, and $2,000,000 for the claims of Plantiff Mary Mendez in her own right, plus costs.

**COUNT X**
**NEGLIGENT AND INTENTIONAL MISREPRESENTATIONS**
**PLAINTIFF MARY O. MENDEZ, as Administratrix**
**Ad Prosequendum of the Estate of Bryan Jadiel Mendez, Deceased,**
**and MARY O.  MENDEZ, in her own right**
**V. DEFENDANTS CINDY AVES, M.D.; KRISTY CRAWFORD, D.O.; DHIREN SONI, D.O.; BERYL KELLY, R.N.; CHRISTINE WARD, R.N.; BARBARA MURPHY, R.N.; JOANNE HEALEY, R.N.; MARGARET NECE, LYNNE HELMES, R.N.; MS./MR. PROFICO, R.N.; AND MS./MR. ALICE, R.N.; AND SUZANNE PANAYIOTOU, CRNA**

174.    Plaintiffs incorporate by reference all prior paragraphs the same as though set forth herein at length.

175.    Mendez and Decedent justifiably relied upon the negligent or intentional representations and/or misrepresentations, both explicitly stated and implied by words or silence, of Defendants Dr. Aves, Dr. Crawford, Dr. Soni, the Defendant Obstetrical Nurses, and CRNA Panayiotou concerning numerous matters during the course of Mendez's and Decedent's care, labor, and delivery as follows:

    (a)    That Dr. Chang was overseeing the care of Mendez and the Decedent;

    (b)    That Dr. Chang was aware of Mendez and the Decedent's condition;

    (c)    That Dr. Chang, Dr. Aves, Dr. Crawford, Dr. Soni, and Dr. John/Jane Doe, Anesthesiologist, were practicing within the limits of their expertise and/or competence;

    (d)    That Dr. Chang, Dr. Aves, Dr. Crawford, Dr. Soni, and Dr. John/Jane Doe, Anestheisologist, were trained in, knew and were following the chain of command procedures;

    (e)    That the Defendant Obstetrical Nurses were sufficiently knowledgeable, experienced and capable to provide proper obstetrical nursing care to Mendez and the baby (the Decedent);

    (f)    That the Defendant Obstetrical Nurses were keeping the Physicians properly informed of Mendez's and the baby's condition;

    (g)    That the Defendant Obstetrical Nurses knew the chain of command procedures and were following them;

    (h)    That all defendants were properly trained in, knew of, and followed any and all necessary and appropriate protocols, rules, regulations, procedures, policies and requirements were being followed;

    (i)    That Mendez and the baby were being properly examined, treated, tested, monitored, cared for and delivered;

    (j)    That the Decedent was not in severe fetal distress;

    (k)    That the Decedent was not in a non-reassuring fetal status;

    (l)    That an emergency C-section was not necessary;

    (m)    That an episiotomy was not necessary;

    (n)    That the Decedent's fetal heart rate were not a cause for concern or emergent delivery;

    (o)    That the Decedent's fetal heart tracing strips were being properly monitored and interpreted;

(p)     That senior ob/gyn and/or other specialists would be promptly summoned if their assistance was required;

(q)     That the baby's fetal heart rate monitoring strips were being monitored and interpreted by qualified personnel;

(r)     That the baby's fetal heart rate monitoring strips were being timely and/or properly monitored and interpreted;

(s)     That the staff, nurses, residents and all defendants were trained in and knowledgeable about all ob/gyn protocols, both medical and procedurally;

(t)     That Dr. Chang, Dr. Aves, and Dr. Crawford did not need assistance, direction, guidance, monitoring, tutelage and/or oversight in treating a baby in fetal distress and/or in delivering the same;

(u)     That Dr. Chang was overseeing the care, treatment, monitoring and/or care of the Decedent baby and/or her Plaintiff mother;

(v)     That Dr. Chang, Dr. Aves, and Dr. Crawford knew and/or followed all hospital protocols, policies and procedures pertaining to the care of the Decedent and/or her Plaintiff mother;

(w)     That the mere use of a fetal monitor was enough to ascertain the health of the baby and ensure a successful delivery of a perfectly viable baby;

(x)     That trained, educated, knowledgeable and experienced doctors were in charge of Mendez and the Decedent's medical care, treatment, monitoring and delivery;

(y)     That sufficient and appropriate medical providers, doctors, nurses, residents and other medical providers were available to treat, monitor, care for and deliver the Decedent and Mendez at all times during the plaintiffs' presence at defendant hospital and while under the care of all defendant entities;

(z)     Offering false excuses for reasons why the baby was not and/or could not have been safely delivered alive;

(aa)    Leading Mendez to believe that anything other than medical negligence, whether gross negligence or otherwise, was at fault for the baby's demise;

(bb)    Failing to order an autopsy;

(cc)    preventing or obstructing an autopsy from bieng performed.

176.    Said defendants knew or in the exercise of reasonable care should have known that Mendez would justifiably rely upon these misrepresentations.

177.    Mendez did justifiably rely upon these misrepresentations by permitting the Defendants to continue to provide Mendez and the Decedent the substandard care which

resulted in plaintiffs' injuries and damages, the loss of Mendez and Galarza's child and the death of the Decedent.

178.   As the direct and proximate result of the aforesaid negligent and/or intentional misrepresentations, Plaintiff, Mendez, sustained severe physical and psychological injuries including, but not limited to, severe depression, insomnia and flashbacks, all of which have rendered Plaintiff, Mendez, sick, sore, lame, prostrate, disabled and disordered, some or all of which may continue for an indefinite time into the future.

179.   As the direct and proximate result of the aforesaid negligent and/or intentional misrepresentations, Plaintiff, Mendez, has been forced to endure great pain and suffering, mental anguish, loss of life's pleasures; loss of general health, strength and vitality; embarrassment, humiliation and physical pain, some or all of which are permanent and may continue for an indefinite time into the future.

180.   As a result of the aforesaid negligent and/or intentional misrepresentations, Plaintiff, Mendez, has been prevented her from performing her usual and customary daily activities and occupations, which may continue for an indefinite time into the future to her great detriment and loss.

181.   As the direct and proximate result of the aforesaid negligent and/or intentional misrepresentations, the Decedent sustained severe physical injuries and all of which rendered him sick, sore, lame, prostrate, disabled and disordered and forced him to suffer great mental anguish, loss of life's pleasures; loss of general health, strength and vitality; humiliation and physical pain until the time that he passed away.

182.   As a result of the aforesaid negligent and/or intentional misrepresentations, Plaintiff, Mendez, has been or will be obliged to receive and undergo medical attention

and care and to expend various expenses for the injuries she and the decedent have suffered and will continue to incur expenditures for an indefinite time in the future to her great detriment and loss.

183.   As a result of the aforesaid negligent and/or intentional misrepresentations, Plaintiff, Mendez, has sustained loss and depreciation of her earnings and earning capacity, and she may continue to endure the same for an indefinite time into the future to her great detriment and loss.

184.   The aforesaid negligent and/or intentional misrepresentations increased the risk of harm to the Decedent, Bryan Jadiel Mendez, and were a direct and substantial factor in causing and/or an actual case of his death.

WHEREFORE, Plaintiffs demand compensatory damages from the Defendants, jointly and severally, in the amount of $12,000,000, comprising $5,000,000 for Wrongful Death action damages, $5,000,000 for Survival Action Damages, and $2,000,000 for the claims of Plaintiff Mary Mendez in her own right, plus punitive damages against the Defendants Cindy Aves, M.D., Kristy Crawford, D.O., Dhiren Soni, D.O., Suzanne Panayiotou, CRNA, and the Defendant Obstetrical Nurses, plus costs.

**COUNT XI**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**PLAINTIFF MILETZY HERNANDEZ**
**V. DEFENDANTS DR. AVES; DR. CRAWFORD; DR. SONI; BERYL KELLY,**
**R.N.; CHRISTINE WARD, R.N.; BARBARA MURPHY, R.N.; JOANNE**
**HEALEY, R.N.; MARGARET NECE, LYNNE HELMES, R.N.; MS./MR.**
**PROFICO, R.N.; AND MS./MR. ALICE, R.N. AND SUZANNE PANAYIOTOU,**
**CRNA**

185.   Plaintiffs incorporate by reference all prior paragraphs the same as though set forth herein at length.

186.    As a direct and proximate result the negligent, careless, and reckless acts, omissions, and breaches of the applicable standards of care on the part of Defendants Dr. Aves, Dr. Crawford, Dr. Soni, the Defendant Obstetrical Nurses, and Suzanne Panayioutou, CRNA, and of her observations of these acts, omissions, and breaches of the applicable standards of care, of the resulting pain and suffering of Plaintiff, Mendez, and of the corpse of the Decedent immediately following his death, Plaintiff, Miletzy Hernandez, sustained severe emotional distresss and physical and psychological injuries including, but not limited to, severe depression, insomnia and flashbacks, all of which have rendered Plaintiff, Hernandez, sick, sore, lame, prostrate, disabled and disordered, some or all of which may continue for an indefinite time into the future.

187.    As the direct and proximate result of the aforesaid Plaintiff, Hernandez, has been forced to endure great pain and suffering, mental anguish, loss of life's pleasures; loss of general health, strength and vitality; embarrassment, humiliation and physical pain, some or all of which are permanent and may continue for an indefinite time into the future.

188.    As the direct and proximate result of the aforesaid Plaintiff, Hernandez, has been prevented her from performing her usual and customary daily activities and occupations, which may continue for an indefinite time into the future to her great detriment and loss.

189.    As the direct and proximate result of the aforesaid Plaintiff, Hernandez, has been or will be obliged to receive and undergo medical attention and care and to expend various expenses for the injuries she and the decedent have suffered and will continue to incur expenditures for an indefinite time in the future to her great detriment and loss.

190.    As the direct and proximate result of the aforesaid Plaintiff, Hernandez, has sustained loss and depreciation of her earnings and earning capacity, and she may

continue to endure the same for an indefinite time into the future to her great detriment and loss.

WHEREFORE, Plaintiffs demand compensatory damages from the Defendants, jointly and severally, in the amount of $100,000 for the claims of Plaintiff Miltezy Hernandez, plus costs.

### COUNT XII
### VICARIOUS LIABILITY FOR MEDICAL/NURSING/PROFESSIONAL MALPRACTICE AND OTHER NEGLIGENT, RECKLESS, INTENTIONAL, WILLFUL AND/OR WANTON ACTS AND FAILURES TO ACT PLAINTIFFS MARY O. MENDEZ, as Administratrix of the Estate of Bryan Jadiel Mendez, Deceased; MARY O. MENDEZ, in her own right; and MILETZY HERNANDEZ V. DEFENDANT, COOPER UNIVERSITY HOSPITAL

205.    Plaintiffs incorporate by reference all prior paragraphs the same as though set forth herein at length.

206.    At all relevant and material times hereto, Defendants Dr. Chang, Dr. Soni, CRNA Panayioutou, Barbara Murphy, R.N., Beryl Kelley, R.N., Joanne Healey, R.N., Ms./Mr. Profico, R.N., Margaret Nece, R.N., Christine Ward, R.N., Ms./Mr. Alice, R.N., and Lynn Helmes, R.N., were employees, agents and/or ostensible agents of Defendant, Cooper University Hospital, which is vicariously liable for the aforesaid malpractice and other negligent, reckless, intentional, willful, and/or wanton acts and/or failures to act of said Defendants, who at all times relevant and material hereto were acting within the course and scope of their employment, agency, and/or ostensible agency and in furtherance of the business and affairs of said Defendant.

207.    As a direct and proximate result of the aforesaid malpractice and other negligent, reckless, intentional willful, and/or wanton acts and/or failures to act of said Defendants, for which Defendant Cooper University Hospital, is vicariously liable, the plaintiffs

62

sustained the injuries and damages set forth at length hereinabove, which are incorporated by reference herein.

WHEREFORE, Plaintiffs demand compensatory damages from the Defendants, jointly and severally, in the amount of $12,100,000, comprising $5,000,000 for Wrongful Death action damages, $5,000,000 for Survival Action Damages, $2,000,000 for the claims of Plantiff Mary Mendez in her own right, and $100,000 for the claims of Plaintiff Miletzy Hernandez in her own right, plus punitive damages against Defendant Cooper Anesthesia Associates, plus costs.

## COUNT XIII
### VICARIOUS LIABILITY FOR MEDICAL/NURSING/PROFESSIONAL MALPRACTICE AND OTHER NEGLIGENT, RECKLESS, INTENTIONAL, WILLFUL AND/OR WANTON ACTS AND FAILURES TO ACT
### PLAINTIFFS MARY O. MENDEZ, as Administratrix of the Estate of Bryan Jadiel Mendez, Deceased; MARY O. MENDEZ, in her own right; and MILETZY HERNANDEZ
### V. DEFENDANT COOPER ANESTHESIA ASSOCIATES, P.C. a/k/a COOPER ANESTHESIA ASSOCIATES

211.    Plaintiffs incorporate by reference all prior paragraphs the same as though set forth herein at length.

212.    At all relevant and material times hereto, Defendants, Dr. Soni and Panayiotou, CRNA, were employees, agents and/or ostensible agents of Defendant, Cooper Anesthesia Associates, P.C. a/k/a Cooper Anesthesia Associates, which is vicariously liable for the aforesaid malpractice and other negligent, reckless, intentional willful, and/or wanton acts and/or failures to act of said Defendants, who at all times relevant and material hereto were acting within the course and scope of their employment, agency, and/or ostensible agency and in furtherance of the business and affairs of said Defendant.

213.    As a direct and proximate result of the aforesaid malpractice and other negligent, reckless, intentional willful, and/or wanton acts and/or failures to act of said Defendants, for which Defendant, Cooper Anesthesia Associates, P.C. a/k/a Cooper Anesthesia Associates, is vicariously liable, the plaintiffs sustained the injuries and damages set forth at length hereinabove, which are incorporated by reference herein.

WHEREFORE, Plaintiffs demand compensatory damages from the Defendants, jointly and severally, in the amount of $12,100,000, comprising $5,000,000 for Wrongful Death action damages, $5,000,000 for Survival Action Damages, $2,000,000 for the claims of Plantiff Mary Mendez in her own right, and $100,000 for the claims of Plaintiff Miletzy Hernandez in her own right, plus punitive damages against Defendant Cooper Anesthesia Associates, P.C. a/k/a Cooper Anesthesia Associates, plus costs.

### COUNT XIV
### VICARIOUS LIABILITY FOR MEDICAL MALPRACTICE AND OTHER NEGLIGENT, RECKLESS, INTENTIONAL, WILLFUL AND/OR WANTON ACTS AND FAILURES TO ACT
### PLAINTIFFS MARY O. MENDEZ, as Administratrix of the Estate of Bryan Jadiel Mendez, Deceased; MARY O. MENDEZ, in her own right; and MILETZY HERNANDEZ
### V. DEFENDANT COOPER UNIVERSITY PHYSICIANS

214.    Plaintiffs incorporate by reference all prior paragraphs the same as though set forth herein at length.

215.    At all relevant and material times hereto, Defendants Dr. Chang, Dr. Aves, Dr. Crawford, D.O., and Dr. Soni were employees, agents and/or ostensible agents of Defendant, Cooper University Physicians, which is vicariously liable for the aforesaid malpractice and other negligent, reckless, intentional willful, and/or wanton acts and/or failures to act said Defendants, who at all times relevant and material hereto were acting

within the course and scope of their employment, agency, and/or ostensible agency and in furtherance of the business and affairs of said Defendant.

216.    As a direct and proximate result of the aforesaid malpractice and other negligent, reckless, intentional willful, and/or wanton acts and/or failures to act of said Defendants, for which Defendant, Cooper University Physicians, is vicariously liable, the plaintiffs sustained the injuries and damages set forth at length hereinabove, which are incorporated by reference herein.

WHEREFORE, Plaintiffs demand compensatory damages from the Defendants, jointly and severally, in the amount of $12,100,000, comprising $5,000,000 for Wrongful Death action damages, $5,000,000 for Survival Action Damages, $2,000,000 for the claims of Plantiff Mary Mendez in her own right, and $100,000 for the claims of Plaintiff Miletzy Hernandez in her own right, plus punitive damages against Defendant Cooper University Physicians, plus costs.

## COUNT XV
## CORPORATE NEGLIGENCE
### PLAINTIFFS MARY O.  MENDEZ, as Administratrix of the Estate of
Bryan Jadiel Mendez, Deceased; MARY O.  MENDEZ,
in her own right; and MILETZY HERNANDEZ
### V. DEFENDANTS, COOPER UNIVERSITY HOSPITAL, COOPER
ANESTHESIA ASSOCIATES, P.C. a/k/a COOPER ANESTHESIA ASSOCIATES,
AND COOPER UNIVERSITY PHYSICIANS

217.    Plaintiffs incorporate by reference all prior paragraphs the same as though set forth herein at length.

218.    The corporate negligence, malpractice, actions and inactions, both intentional and negligent, of Defendants, Cooper University Hospital, Cooper Anesthesia Associates, P.C. a/k/a Cooper Anesthesia Associates, and Cooper University Physicians, in addition to all allegations set forth above and incorporated herein, consisted of the following:

(a)     Hiring and retaining and/or extending staff privileges to attending physicians and residents lacking the requisite levels of knowledge, skill and dedication;

(b)     Failing and neglecting to employ or hire doctors with adequate experience, qualifications and skills to properly treat persons exhibiting the signs, symptoms and complaints as were present in Mendez and Decedent;

(c)     Failing and neglecting to employ or hire doctors with adequate experience, qualifications and skills to properly perform surgical procedures upon persons exhibiting symptoms and complaints as were exhibited by Mendez and Decedent;

(d)     Extending staff privileges to doctors who were not sufficiently qualified by experience, research and educational background to adequately diagnose, treat and attend to Mendez and Decedent for the conditions then affecting Mendez and Decedent;

(e)     Hiring and retaining physicians, attending physicians, residents, interns, physician assistants, nursing supervisors, nurses and nursing assistants lacking the requisite levels of education, knowledge, skill and dedication;

(f)     Failing and neglecting to employ physicians, attending physicians, residents, interns, physician assistants, nursing supervisors, nurses, and nursing assistants who were sufficiently qualified by experience and education background to adequately treat and attend to Mendez and Decedent for the conditions then affecting Mendez and Decedent;

(g)     Hiring and retaining or affiliating with the individual defendants herein and Dr. Chang when they knew or, in the exercise of reasonable care, should have known that they lacked the requisite levels of knowledge, skill and dedication;

(h)     Failing to institute and/or enforce adequate chain of command procedures;

(i)     Failing to properly supervise and oversee the patient care within their walls by physicians, attending physicians, residents, interns, physician assistants, nursing supervisors, nurses, and nursing assistants;

(j)     Failing to provide adequate supervision of their staff and employees to insure that proper hospital practices and procedures are followed;

(k)     Failing to properly train physicians, attending physicians, residents, interns, physician assistants, nursing supervisors, nurses, and nursing assistants and/or others in any chain of command;

(l)     Failing to enact, institute, teach, promulgate, and/or enforce any chain in command policies;

(m)     Failing to enact, institute, teach, or promulgate, or if enacted or promulgated, in failing to enforce sufficient rules and regulations relating to the treatment and care of patients in the conditions of

Mendez and Decedent.

219.   As the direct and proximate result of the corporate negligence of Defendants, Cooper University Hospital, Cooper Anesthesia Associates, P.C. a/k/a Cooper Anesthesia Associates, and Cooper University Physicians, as aforesaid, Plaintiff, Mendez, sustained severe physical and psychological injuries including, but not limited to, severe depression, insomnia and flashbacks, all of which have rendered Plaintiff, Mendez, sick, sore, lame, prostrate, disabled and disordered, some or all of which may continue for an indefinite time into the future.

210.   As the direct and proximate result of the said Defendants' corporate negligence, Plaintiff, Mendez, has been forced to endure great pain and suffering, mental anguish, loss of life's pleasures; loss of general health, strength and vitality; embarrassment, humiliation and physical pain, some or all of which are permanent and may continue for an indefinite time into the future.

211.   As the direct and proximate result of the said Defendants' corporate negligence, Plaintiff, Mendez, has been prevented her from performing her usual and customary daily activities and occupations, which may continue for an indefinite time into the future to her great detriment and loss.

212.   As the direct and proximate result of the said Defendants' corporate negligence, the Decedent sustained severe physical injuries and all of which rendered him sick, sore, lame, prostrate, disabled and disordered and forced him to suffer great mental anguish, loss of life's pleasures; loss of general health, strength and vitality; humiliation and physical pain until the time that he passed away.

213.    As the direct and proximate result of the said Defendants' corporate negligence, Plaintiff, Mendez, has been or will be obliged to receive and undergo medical attention and care and to expend various expenses for the injuries she and the decedent have suffered and will continue to incur expenditures for an indefinite time in the future to her great detriment and loss.

214.    As the direct and proximate result of the said Defendants' corporate negligence, Plaintiff, Mendez, has sustained loss and depreciation of her earnings and earning capacity, and she may continue to endure the same for an indefinite time into the future to her great detriment and loss.

215.    As the direct and proximate result of the said Defendants' corporate negligence, Plaintiff, Miletzy Hernandez, sustained severe emotional distresss and physical and psychological injuries including, but not limited to, severe depression, insomnia and flashbacks, all of which have rendered Plaintiff, Hernandez, sick, sore, lame, prostrate, disabled and disordered, some or all of which may continue for an indefinite time into the future.

217.    As the direct and proximate result of the aforesaid Plaintiff, Hernandez, has been forced to endure great pain and suffering, mental anguish, loss of life's pleasures; loss of general health, strength and vitality; embarrassment, humiliation and physical pain, some or all of which are permanent and may continue for an indefinite time into the future.

218.    As the direct and proximate result of the aforesaid Plaintiff, Hernandez, has been prevented her from performing her usual and customary daily activities and occupations, which may continue for an indefinite time into the future to her great detriment and loss.

219.    As the direct and proximate result of the aforesaid Plaintiff, Hernandez, has been or will be obliged to receive and undergo medical attention and care and to expend various expenses for the injuries she and the decedent have suffered and will continue to incur expenditures for an indefinite time in the future to her great detriment and loss.

220.    As the direct and proximate result of the aforesaid Plaintiff, Hernandez, has sustained loss and depreciation of her earnings and earning capacity, and she may continue to endure the same for an indefinite time into the future to her great detriment and loss.

221.    The aforesaid corporate negligence of said Defendants increased the risk of harm to the Decedent, Bryan Jadiel Mendez, and was a direct and substantial factor in causing and/or an actual case of his death.

WHEREFORE, Plaintiffs demand compensatory damages from the Defendants, jointly and severally, in the amount of $12,100,000, comprising $5,000,000 for Wrongful Death action damages, $5,000,000 for Survival Action Damages, $2,000,000 for the claims of Plantiff Mary Mendez in her own right, and $100,000 for the claims of Plaintiff Miletzy Hernandez in her own right, plus costs.

## COUNT XVI
## WRONGFUL DEATH
### PLAINTIFF MARY O. MENDEZ, as Administratrix
### Ad Prosequendum of the Estate of Bryan Jadiel Mendez, Deceased,
### and MARY O. MENDEZ, in her own right
### V. ALL DEFENDANTS

222.    Plaintiffs incorporate by reference all prior paragraphs the same as though set forth herein at length.

223.    The medical/professional malpractice, negligence, carelessness, recklessness, willful and wanton conduct, omissions and failures to comply with the applicable

standards of medical/nursing care and conduct evidencing the Defendants' recklessness and conscious indifference to the consequences and rights of Mendez and Decedentduring the aforementioned hospitalization of Mendez and her baby are stated herein before and after and incorporated by reference herein.

224.   The above-described wrongful acts and omissions of the Defendants herein increased the risk of harm and death to the Decedent, Bryan Jadiel Mendez, and were a direct and substantial factor in causing and/or an actual cause of his death.

225.   As a result of the above-described wrongful acts and omissions of Defendants, individually and by and through their employees, agents and/or ostensible agents, plaintiffs' Decedent, Bryan Jadiel Mendez, died, and the Plaintiffs sustained serious and permanent injuries and damages.

226.   Plaintiff, Mary O. Mendez, as Administratrix of the Estate of Bryan Jadiel Mendez, Deceased, brings this action on behalf of the survivors of plaintiffs' Decedent under and by virtue of the laws of the State of New Jersey, N.J. Stat. Ann § 2A: 31:1 et seq.

227.   Plaintiffs' Decedent left surviving her the following persons entitled to recover damages, and on their behalf this action is brought:

Mary O. Mendez, Mother
Apartment 3-A
2121 Mt. Ephraim Avenue
Camden, NJ 08105

and

Edwin Galarza, Father
c/o Mary O. Mendez, Administratrix of the Estate of
Bryan Jadiel Mendez, Deceased
Apartment 3-A
2121 Mt. Ephraim Avenue

Camden, NJ  08105

228.    Mendez as Administratrix of the Estate of Bryan Jadiel Mendez, deceased, and, in the alternative, the survivors of the Decedent in their own rights, claim(s) damages for the pecuniary losses suffered by the Decedent's survivors by reason of his death, as well as reimbursement for the medical bills, funeral expenses, and other expenses incurred in connection therewith, and all other damages allowed by law.

229.    As a result of the death of the Decedent, his survivors have been deprived of the earnings, maintenance, guidance, support and comfort they would have received from him for the rest of his natural life.

230.    At no time during his lifetime did the Decedent bring an action for his personal injuries and no other action(s) for his death has been commenced against defendants.

WHEREFORE, Plaintiffs demand compensatory damages from the Defendants, jointly and severally, in the amount of $5,000,000, plus punitive damages against all defendants other than the United States of America, plus costs.

**COUNT XVII**
**SURVIVAL ACTION**
**PLAINTIFF MARY O. MENDEZ, as Administratrix**
**Ad Prosequendum of the Estate of Bryan Jadiel Mendez, Deceased,**
**and MARY O.  MENDEZ, in her own right**
**V. ALL DEFENDANTS**

231.    Plaintiffs incorporate by reference all prior paragraphs the same as though set forth herein at length.

232.    The medical/professional malpractice, negligence, carelessness, recklessness, willful and wanton conduct, omissions and failures to comply with the applicable standards of medical/nursing care and conduct evidencing the Defendants' recklessness and  conscious  indifference  to  the  consequences  and  rights  of  Mendez  and

Decedentduring the aforementioned hospitalization of Mendez and her baby are stated herein before and after and incorporated by reference herein.

233.    The above-described wrongful acts and omissions of the Defendants herein, and any of Defendants' employees, agents, and ostensible agents, and the other Defendants herein, increased the risk of harm and death to the Decedent, Bryan Jadiel Mendez, and were a direct and substantial factor in causing and/or an actual cause of her death.

234.    As a result of the above-described wrongful acts and omissions of Defendants herein, and any of Defendants' employees, agents, and ostensible agents, and the other Defendants herein, Plaintiffs' Decedent, Bryan Jadiel Mendez, sustained pain and suffering; loss of life's pleasures; loss of general health, strength and vitality; loss of earnings and earning capacity; serious injuries and death.

235.    Plaintiff, Mary O. Mendez, as Administratrix of the Estate of Plaintffs' Decedent, brings this action on behalf of the Estate of Plaintiffs' Decedent under and by virtue of the laws of the State of New Jersey, N.J. Stat. Ann § 2A: 15-3.

236.    As a direct and proximate cause of the aforesaid wrongful acts and omissions of Defendants herein and any of Defendants' employees, agents, and ostensible agents, and the other Defendants herein, Decedent suffered and Defendants are liable for the following damages:

      (a)    Decedent's pain and suffering between the time of his injuries and the time of death;

      (b)    Decedent's total estimated future earning power less his estimated cost of personal maintenance through the time of his life expectancy;

      (c)    Decedent's loss of retirement and social security income;

      (d)    Decedent's other financial losses suffered as a result of his death;

      (e)    Decedent's loss of wages, earnings and earning power for the period of time beginning on the date of death and continuing throughout the remainder of the Decedent's life expectancy, which

earnings and earning power would have continued for the said period of time but for the aforesaid tortuous conduct;

(f)     Decedent's loss of life and life's pleasures;

(g)     For expenses incident to the administration of the estate of the Decedent;

(h)     For expenses incident to the administration of the estate of the Decedent;

(i)     For other losses to the last illness and death of the Decedent;

(j)     For funeral and burial expenses;

(k)     For all other damages allowed by the law.

WHEREFORE, Plaintiffs demand compensatory damages from the Defendants, jointly and severally, in the amount of $5,000,000, plus punitive damages against all defendants other than the United States of America, plus costs.

## DEMAND FOR JURY TRIAL

A jury trial is hereby demanded as to all defendants other than Defendant United States of America.

Respectfully submitted,

Loren T. Finesmith, Esquire
Attorney for Plaintiffs

# EXHIBIT "A"

Docket No.: 2010-1892

# State of New Jersey
# Camden County Surrogate's Court

In the matter of the Estate

**Bryan Jadiel Mendez, Deceased**

**LETTERS ADMINISTRATION**

**AD PROSEQUENDUM**

I, Patricia Egan Jones, Surrogate of Camden County and State of New Jersey, do hereby certify that on March 10, 2011, administration ad prosequendum of decedent, who died intestate, late of the County of Camden and State of New Jersey was granted by me to Mary O. Mendez of said County of Camden who is duly authorized to bring an action, institute a proceeding or make a claim in his name as such administrator ad prosequendum as is the statute such case provided.



WITNESS my hand and seal of office on

March 10, 2011

Surrogate *Deputy*

---

Letters Administration Ad Prosequendum        Version 3.9.12.21        Page 1 of 1