UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

MARY O. MENDEZ, ET AL.,

        Plaintiffs,              CIVIL NO. 14-7778(NLH/KMW)

v.                               OPINION

UNITED STATES OF AMERICA,
ET AL.,

        Defendants.

_____

**APPEARANCES**:

LOREN T. FINESMITH
1521 LOCUST STREET
10TH FLOOR, SUITE 1001
PHILADELPHIA, PA 19102
        On behalf of Plaintiffs Mary O. Mendez,
        Estate of Bryan Jadiel Mendez

JARAD L. SILVERSTEIN
CAROLYN R. SLEEPER
PARKER MCCAY PA
9000 MIDATLANTIC DRIVE
SUITE 300
MOUNT LAUREN, NJ  08054
856-596-8900
        On behalf of Defendants Cindy Aves, Beryl Kelley, Christine
Ward, Cooper Anesthesia Associates, Cooper University Hospital,
and Cooper University Physicians

**HILLMAN**, District Judge

        Initially before the Court was the motion (Docket No. 96)

of Defendants[1] Cindy Aves, Beryl Kelley, Christine Ward, Cooper

_____

[1] Co-Defendant, the United States of America, did not join in
this motion.

Anesthesia Associates, Cooper University Hospital, and Cooper University Physicians ("Defendants") for partial summary judgment as to any and all claims for punitive damages made by Plaintiff Mary Mendez both individually in her own right and as the Administrator of the Estate of her son, the Estate of Brian Janiel Mendez, Deceased ("Plaintiffs").  Defendants also moved for partial summary judgment as to Plaintiffs' claim for intentional misrepresentation in Count 7.[2]

For the reasons described below, Defendant Kelley ("Defendant") is now the only Defendant moving for partial summary judgment as to punitive damages and the punitive damages claims in Counts 6 and 13 are now the only claims contested in this motion.[3]  Defendant Kelley's motion will be granted.

---

[2] The parties use Roman numerals to denominate the various counts in the Amended Complaint.  We use Arabic numerals.

[3] Defendants' initially sought partial summary judgment on two grounds.  First, referencing Counts 5, 6, 7, 9, 10, 12, and 13, they sought to dismiss all claims for punitive damages. Plaintiffs in their opposition contested Defendants' motion "only as to the punitive damages claims against Defendant Kelley for Plaintiff Mary Mendez individual emotional distress claim and the estate's Survival statute claim." (Docket No. 98, n. 1.) Plaintiffs state "these claims," are set forth in Counts 6 and 13. (Docket No. 98, at 2.)  Plaintiffs have represented to the Court that they will circulate a stipulation to dismiss the other punitive damage claims in question. (Id.)  The Court is awaiting the filing of the stipulation on the Docket.

Defendants also sought in their initial papers to dismiss Count 7 in its entirety.  Plaintiffs did not respond to the Defendants' assertion that there is no basis in law to sustain Plaintiffs' claim of "intentional misrepresentation," alleged in Count 7.  At this juncture, the Court assumes that Plaintiff

## FACTUAL AND PROCEDURAL BACKGROUND

This Court laid out the facts of this action in depth in its Opinion of December 7, 2016. (Docket No. 103.)  To summarize, this is an obstetrics medical malpractice action involving the death of a newborn baby, Bryan Jadiel Mendez, and emotional and physical pain to his mother, Mary O. Mendez.  In the accompanying Order of December 7, 2016, we granted Defendants' motion for partial summary judgment and dismissed any and all claims of the sister of Mary Mendez, Miletzy Hernandez, who had claimed negligent infliction of emotional distress. (Docket Nos. 103 (Opinion) and 104 (Order).) Presently before the Court is Defendant Kelley's  motion for partial summary judgment as to any and all claims made by Plaintiffs for punitive damages.

## JURISDICTION AND CHOICE OF LAW

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(b) and 28 U.S.C. § 1367(a) in that one of the Defendants is the United States.  The United States has sovereign immunity except where it consents to be sued. U.S. v. Bormes, --- U.S. ---, 133 S.Ct. 12, 16, 184 L.Ed.2d 317 (2012). The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 et seq., provides for a limited waiver of the sovereign immunity

---

withdraws Count 7 and a voluntary dismissal of Count 7 will be addressed in the forthcoming stipulation.

of the United States. 28 U.S.C. § 2679(b)(1); White-Squire v. U.S. Postal Service, 592 F.3d 453, 456 (3d Cir. 2010).

The FTCA gives a federal district court exclusive jurisdiction over civil actions

> on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b); CNA v. U.S., 535 F.3d 132, 141 (3d Cir. 2008)(citing FDIC v. Meyer, 510 U.S. 471, 477, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)).

FTCA claims are governed by the substantive tort law of the state where the acts or omissions occurred. See FDIC v. Meyer, 510 U.S. at 477-78; Ciccarone v. United States, 486 F.2d 253, 257 (3d Cir. 1973).  We therefore apply New Jersey substantive law to this motion for partial summary judgment.

**LEGAL STANDARD: MOTION FOR SUMMARY JUDGMENT**

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477

4

U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(quoting Fed.R.Civ.P. 56.)  An issue is genuine if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A fact is material if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not weigh evidence or determine credibility; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.")(citation omitted); see also Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n. 2 (3d Cir. 2001)("Although the initial burden is on the summary judgment movant to show the

absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" — that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.")(quoting Celotex, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.  A "party opposing summary judgment may not rest upon the mere allegations or denials of the ... pleading[s]." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001)(internal quotations omitted).  To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence contradicting those offered by the moving party, Anderson, 477 U.S. at 256-57, and do more than solely rest upon mere allegations, general denials, or vague statements, Saldana, 260 F.3d at 232.

## ANALYSIS

The issue before the Court is whether Plaintiffs' punitive damages claim against Kelley should be dismissed.  In support of her motion for partial summary judgment, Defendant Kelly argues that Plaintiffs have produced no evidence to support their claim that Kelley was "motivated by intent or accompanied by a willful

and wanton disregard" of Plaintiffs' rights and therefore, under the Punitive Damages Act ("Act"), N.J.S.A. 2A:15-5.12, no punitive damages should be allowed. (Docket No. 96 at 5.)

Plaintiffs respond that Defendant Kelley failed to comply with the standard of care required of a labor and delivery nurse and the standard of care due a mother and fetus. (Docket No. 98 at 3.)  Plaintiffs argue that their evidence establishes that Kelley's activities equaled a "continuous pattern of negligence" toward both mother and fetus. (Id. at 4.)  They contend that "in light of this pervasive pattern of negligence," the fact finder may reasonably conclude that clear and convincing evidence exists that Kelley was "acting with conscious disregard for the well-being of Ms. Mendez and the fetus and that a reasonable obstetrical nurse in her position should have recognized that her conduct toward the fetus in the operating room was extremely dangerous to the well-being and survival" of the baby and his mother. (Id. at 5-6.)  For that reason, Plaintiffs conclude the fact finder could reasonably find Defendant Kelley liable for punitive damages. (Id. at 6.)

To support their argument, Plaintiffs submitted expert testimony from obstetrical nursing expert Robin A. Thompkins, R.N. ("Thompkins Expert Report") that Kelley failed to correctly care for Mendez in a number of ways including failing to: (1) properly monitor Mendez's blood pressure; (2) take actions to

improve her blood pressure; (3) report to physicians that her blood pressure had entered a severe range; (4) properly monitor her blood sugar levels and (5) timely report her findings to the physicians. (Docket No. 98 at 3)(citing Thompkins Expert Report, Docket No. 98 at Exhibit "C".)

As to the care owed the fetus, Thompkins stated Kelley's care in the labor and delivery room was deficient for a number of reasons including her failure to: (1) improve the condition of the uterus; (2) properly determine the fetal heart rate ("FHR") and (3) order actions to improve the fetal heart rate. (Id.)  In the operating room, according to Thompkins, Kelley failed to report to the physicians the absence of variability of fetal heart rate monitor tracings. (Id. at 3-4.)  Thompkins concluded this was "well below the standard of care." (Id.)

Plaintiffs obstetrical expert, John Stack, M.D., stated in his report ("Stack Expert Report") that Kelley and others failed to report to the "physicians that the FHR tracing had deteriorated to Category II tracings." (Docket No. 98 at 4.) (citing the Stack Expert Report, Docket No. 98 at Exhibit "D.") With this information, Dr. Stack contended the physicians would have been alerted to the need "to begin the caesarian section by 4:13 to 4:14 a.m. rather than 4:25 a.m." (Id. at 4.)  He said he would have expected a nurse in "Kelley's position in the operating room to have reported to him the absence of

8

variability in the FHR tracing." (Id.)  In his opinion, Kelley's failures to comply with the standard of care as to the fetus resulted in the baby's death after his birth. (Id.)  He also concluded that all of Kelley's errors "decreased the baby's likelihood of survival and were the causes of his death." (Id. quoting Stack Expert Report.)  He did not render an opinion upon whether Kelley had deviated from the standard of care; his opinion on standard of care was limited to a review of the physicians' care.

### The Punitive Damages Act

The Punitive Damages Act ("Act"), a New Jersey state law, provides that plaintiff may be awarded punitive damages only if

> plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.  This burden of proof may not be satisfied by proof of any degree of negligence, including gross negligence.

N.J.S.A. 2A:15-5.12.

"Actual malice" is defined under the Act as, "intentional wrongdoing in the sense of an evil-minded act." N.J.S.A. 2A:15-5.10.  "Wanton and willful disregard" means "a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." N.J.S.A. 2A:15-5.10.

## Negligence or Gross Negligence

Plaintiffs' expert concluded that Kelley's actions were "well below the standard of care." (Docket No. 98 at 4.) However, negligence, even gross negligence is an insufficient basis for punitive damages under the statute. See N.J.S.A. 2A:15-5.12; see also Edwards v. Our Lady of Lourdes Hosp., 217 N.J. Super. 448, 460, (App. Div. 1987)("Neither mere negligence nor gross negligence can support an award of punitive damages."); Smith v. Whitaker, 160 N.J. 221, 242(1999)("Mere negligence, no matter how gross, will not suffice as a basis for punitive damages.").

## Actual Malice or a Wanton and Willful Disregard of Persons

Nothing in the evidence produced by Plaintiffs suggests Kelley acted with "actual malice."  Plaintiffs did not provide evidence of intentional wrongdoing.  Nor did they show Kelley was evil-minded.  Plaintiffs produced no evidence Kelley acted with "wanton and willful disregard" toward Plaintiffs.  There is no evidence of her deliberately acting or failing to act while knowingly risking harm to another.  Nothing in Plaintiffs' reports intimates Kelley acted with reckless indifference to the consequences of her actions to Mendez and Bryan.

Furthermore, as to Plaintiffs' argument that a "continuous pattern of negligence" and "pervasive pattern of negligence" constitute a basis for punitive damages, there is no statutory

authority for the legal conclusion that a pattern of negligence satisfies the Legislature's narrow definition.  As stated above, the statute is clear; Plaintiffs must show Kelley acted with actual malice or wanton and willful disregard of the persons who might be harmed in order to be awarded punitive damages.  The "continuous pattern" and "pervasive pattern" of actions, do not in these circumstances, rise to the levels of "willful and wanton disregard" or "actual malice" required by statute.

Citing McLaughlin v. Rova Farms, 56 N.J. 288, 306 (1970), Plaintiffs argue, "It is not necessary, however, that the defendant know that his or her conduct is 'extremely dangerous.' It is sufficient that a reasonable person in defendants' position should know this." (Docket No. 98 at 5.)  In Rova Farms, the Supreme Court of New Jersey affirmed the trial court judgment, finding there was willful and wanton misconduct by the lake operator in an action involving a diving accident.  In Rova Farms, the unclear lake water off the end of the diving platform was extremely shallow.  The Court explained that

> a jury would be warranted in finding that any
> reasonably prudent operator of the lake would be or
> should be aware of the danger.  In fact, once a jury
> found that the location and appearance of the
> structure gave an invitation to dive therefrom into
> the three or four feet of water, a sequential
> conclusion seems inescapable, I.e., (sic) that injury
> to a diver who yielded to the invitation was probably
> inevitable.  Plaintiffs' expert said the facility was
> the most dangerous he had ever seem (sic), and that
> diving from it never should have been allowed.

11

<u>Id</u>. at 309.  The Court concluded that

> defendants' affirmative action in creating what a
> reasonably prudent person would or should know was a
> highly dangerous hazard, coupled with its omission to
> notify the injured plaintiff of the danger or to
> prevent him from subjecting himself to it, justified a
> finding of such a reckless indifference to the
> probability of injury as to constitute willful and
> wanton misconduct."

<u>Id</u>.

There is no parallel between the actions of the defendant in <u>Rova Farms</u> and the actions of Kelley.  In <u>Rova Farms</u> defendant affirmatively created a "highly dangerous hazard" and a facility that was the "most dangerous" the expert had ever seen.  <u>Id</u>.  The lake operator essentially "invited" persons to dive into such shallow water and that injuring themselves was "probably inevitable."  <u>Id</u>.  Creating the obvious danger and failing to warn about it constituted willful and wanton misconduct.  By contrast, the evidence Plaintiffs have presented here, the failure of Kelley to perform a number of her responsibilities, shows at most, negligence or gross negligence, neither rising to the level of willful and wanton disregard of persons described in <u>Rova Farms</u>.

### Aggravating Circumstances

Punitive damages are not to be assessed lightly.  The Act says punitive damages are awarded "because of aggravating

circumstances in order to penalize and to provide additional deterrence against a defendant to discourage similar conduct in the future." N.J.S.A. 2A:15-5.10.

Plaintiffs cite in passing Pavlova v. Mint Management Corp., 375 N.J. Super. 397 (2005), an action in which the Appellate Division of the Superior Court of New Jersey determined there were no aggravating circumstances and no basis for punitive damages. Pavlova involved a suit against the owner of a senior citizen housing complex following the death of a resident whose towel caught fire after she hung it on a towel rack located near a wall mounted heater. The plaintiff argued the building owner failed to provide adequate notice of the potential danger. The Court ruled against awarding punitive damages because "[A]bsent here is the blatantly egregious, deliberate conduct that was practically certain to cause both imminent and serious harm." Id. at 407. The Court added "Nor does the evidence admit of the likelihood of serious and imminent harm, much less of defendant's awareness of that likelihood." Id. at 407-08.

The Court distinguished the facts before it from the facts in two other actions where punitive damages were allowed: "The aggravating circumstances that evidence an utter disregard for others, which were so critical to the decisions in Smith and Dong, and are meant to be punished and deterred by punitive

damages, are absent in this case." Id. at 408-09 (internal citations omitted).

In Smith v. Whitaker, 313 N.J. Super. 165, 191, (App.Div.1998), aff'd, 160 N.J. 221, (1999) a motorist was killed after the defendant oil company knowingly and deliberately allowed an inexperienced and virtually untrained driver to drive an oil truck with severely defective brakes.

In Dong v. Alape, 361 N.J. Super. 106, 121-22 (App. Div. 2003), a pedestrian was killed by a defendant who: (1) knew he was an alcoholic; (2) knew he frequently blacked out from drinking; (3) was extremely intoxicated the day of the accident and (4) drove erratically at a high speed on a busy street during rush hour.

The evidence Plaintiffs presented as to Kelley's care of Mendez and her son, in contrast with the evidence in Smith and Dong, does not show "aggravating circumstances that evidence an utter disregard for others." See Pavlova, 375 N.J. Super. at 408.  Nor here is there evidence of "blatantly egregious, deliberate conduct." See id. at 407.  There is no evidence before this Court that Kelley was aware of the likelihood that her actions would result in serious imminent harm to Plaintiffs. See id. at 407-08.  Thus, the evidence does not rise to a level of aggravating circumstances under the Act.

14

**CONCLUSION**

Plaintiffs' expert Thompkins concludes Kelley's actions were well below the standard of care due Plaintiffs.  However, under the Act, neither negligence nor gross negligence is a sufficient basis for punitive damages.  Plaintiffs' evidence does not establish that Kelley's actions were motivated by actual malice or willful and wanton conduct.  Therefore, Plaintiffs have not met the statutory threshold allowing for punitive damages only when plaintiff proves by clear and convincing evidence actual malice or a wanton and willful disregard of foreseeable persons who might be harmed.

Nor does Plaintiffs' evidence show the required aggravating circumstances.  Punitive damages are not to be assessed lightly but are to be awarded because of aggravating circumstances so as to penalize and to discourage future similar conduct.  Even assuming the truth of Plaintiffs' evidence, Plaintiffs have failed to offer sufficient proofs to meet the burden of proof for an award of punitive damages.  Therefore, this Court grants Defendant's motion for partial summary judgment.  An appropriate Order will be entered.


Dated:  February 3, 2017           s/ Noel L. Hillman
                                   Noel L. Hillman, U.S.D.J.

At Camden, New Jersey


15