UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARY MENDEZ, et al., | HONORABLE NOEL L. HILLMAN |
| Plaintiffs, | CIVIL ACTION NO. 14-7778 |
| v. | **OPINION** |
| UNITED STATES OF AMERICA, et al., |  |
| Defendants. |  |

**APPEARANCES:**

LOREN FINESMITH, ESQ.
191 Presidential Blvd., No. 416
P.O. Box 443
Bala Cynwyd, Pennsylvania 19004
      Counsel for Plaintiffs

WILLIAM FITZPATRICK, ACTING U.S. ATTORNEY
By: Jordan M. Anger, A.U.S.A.
970 Broad Street, Suite 700
Newark, New Jersey 07102
      Counsel for Defendant United States of America

PARKER MCCAY PA
By: Jarad L. Silverstein, Esq.
    Carolyn R. Sleeper, Esq.
9000 Midlantic Drive, Suite 300
Mount Laurel, New Jersey 08054
      Counsel for all other Defendants

**HILLMAN**, United States District Judge:

    This is a medical malpractice suit. Plaintiff Mary Mendez asserts that the negligence of the various medical professionals

1

who treated her during her pregnancy caused the death of her baby during, or shortly after, the baby's birth.

One of those medical professionals is Dr. Eric Chang, who is employed by CAMcare Health Corporation ("CAMcare"). CAMcare is a federally qualified health center ("FHQC"), and the United States has been substituted for Dr. Chang pursuant to the provisions of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680.

The United States presently moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, or alternatively, for partial summary judgment pursuant to Fed. R. Civ. P. 56. At issue is whether the New Jersey Charitable Immunities Act, N.J.S.A. 2A:53A-7 et seq., applies to the claims against Dr. Chang; and if so, whether the NJCIA's absolute immunity provision, or the damages cap provision, applies.

If the absolute immunity provision applies, this Court lacks subject matter jurisdiction by operation of the United States' limited waiver of sovereign immunity in the FTCA. *See* 28 U.S.C. § 2674. If the damages cap applies, the United States is entitled to summary judgment limiting its liability to $250,000. If the NJCIA does not apply at all, as Plaintiff contends, then the United States' Motion should be denied in its entirety.

For the reasons stated herein, the Court holds that the NJCIA's damages cap provision applies. Accordingly, the United States' motion to dismiss for lack of subject matter jurisdiction will be denied, and the motion for partial summary judgment will be granted.

**I.**

Four other opinions have been written in this case. *See Mendez v. United States,* 2017 U.S. Dist. LEXIS 16153 (D.N.J. Feb. 3, 2017); *Mendez v. United States,* 2016 U.S. Dist. LEXIS 168854 (D.N.J. Dec. 7, 2016); *Mendez v. United States,* 2015 U.S. Dist. LEXIS 102381 (D.N.J. Aug. 5, 2015); *Mendez v. Chang*, 2013 U.S. Dist. LEXIS 152131 (D.N.J. Oct. 23, 2013). The Court recites only the facts directly relevant to the instant motion.

CAMcare is classified as a public charity under the Internal Revenue Code. (Plaintiff's Response to United States' Statement of Material Facts Not in Dispute ("PSUF") ¶ 1) It provides "primary health care" services to "underserved families" through its operation of eight "health centers" located in Camden and Gloucester Counties. (PSUF ¶¶ 1-2)

CAMcare has no inpatient facilities and provides "no trauma care, not even suturing." (PSUF ¶ 1) However, the services CAMcare does provide-- "including primary care (internal medicine, pediatrics, obstetrical, gynecological, prenatal and perinatal services, and podiatry), preventive care (family

3

planning, well-child services, dental services, and nutrition), [and] related support and enabling health services"-- are available 24 hours a day, 7 days a week. (PSUF ¶ 17-18)

CAMcare's Certificate of Incorporation states that CAMcare's corporate purposes are:

> a. To provide primary health services, including the services of physicians and other health providers, and, where feasible, services of physicians' assistants and nurse clinicians, mental health services, dental services, diagnostic laboratory and radiologic services, preventive health services (including children's eye and ear examinations to determine the need for vision and hearing corrections, prenatal services, well child services, preventive dental services, and family planning services), emergency medical services, and transportation services as required for adequate patient care;
>
> b. To provide as appropriate supplemental health services necessary for the adequate support of primary health services, including hospital services, home health services, extended care facility services, extended care facility services, rehabilitative services (including physical therapy) and long term physical medicine, mental health services, dental services, vision services, allied health services, pharmaceutical services, therapeutic radiologic services, public health services (including nutrition education and social services), health education services, and services which promote optimal use of primary and supplemental health services, including as necessary and appropriate the services of bilingual outreach workers;
>
> c. To provide referrals to providers of supplemental health services and patients, as appropriate and feasible, for the provision of such services;
>
> d. To provide, as may be appropriate, environmental health services;

> e. To provide information on the availability and proper use of health services;
>
> f. To raise funds from private donations and to apply for and receive governmental and private grants and loans;
>
> g. To bill for services rendered on a contractual, fee for service or insured basis;
>
> h. To provide educational programs for resident physicians, medical and nursing students, and members of other health care professions;
>
> i. To conduct and support research in the area of health services delivery and health education; [and]
>
> j. To carry on any activity and to deal with and expend any property or income therefrom for any of the foregoing purposes in such manner as in the judgment of the Board of Trustees will best promote the purpose of the Corporation, without limitation, except such limitations, if any, as may be contained in this Certificate of Incorporation, the By-Laws of the Corporation, or any other limitations as are prescribed by law.

(PSUF ¶ 5) The statement of corporate purpose in CAMcare's Bylaws is substantially similar. (PSUF ¶ 12)

CAMcare's Board of Trustees is "an all-volunteer Board comprised of community members." (PSUF ¶ 15)

"As required of FQHCs by the federal government, CAMcare uses a sliding discount policy to determine appropriate patient discounts on the basis of family size and ability to pay according to federal poverty guidelines." (PSUF ¶ 9) During the

relevant time period, "approximately 84.5% of CAMcare's patients were Medicaid recipients." (PSUF ¶ 8)[1]

During the relevant time period, CAMcare's total revenue was $19,885,237.00 (PSUF ¶ 30) The vast majority of the total revenue came from two sources: (1) patient revenue (i.e., Medicaid, Medicare, private insurance and self-pay); and (2) public (i.e., federal, state and local) grants. (PSUF ¶ 31-33, 37)

If CAMcare received any private grant money during the relevant time period, it was a "very small" fraction of CAMcare's total revenue. (PSUF ¶ 5)[2]

**II.**

**A.**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction. Facial attacks contest the sufficiency of the pleadings, and in reviewing such attacks, the

---

[1] The Complaint alleges that "all medical bills for the hospitalization and medical care and treatment provided to Plaintiff Mary Mendez and to the Decedent, Bryan Jadiel Mendez, which is the subject of this action were paid or payable through the Medicaid program." (Compl. ¶ 7)

[2] The United States contends that during the relevant time period CAMcare received $100,000.00 in private grant money. The Court does not accept this disputed fact as true; however, the Court observes that even if it were true, it would be a very small amount relative to CAMcare's total revenue of over $19 million.

Court accepts the allegations as true. *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir.), *cert. denied*, 558 U.S. 1091 (2009). Factual attacks, on the other hand, require the Court to weigh the evidence at its discretion, meaning that the allegations in the complaint have no presumptive truthfulness. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

The United States' Motion, as it pertains to the NJCIA absolute immunity issue, is a factual challenge.

**B.**

The Court incorporates herein by reference the summary judgment standard set forth in the previous summary judgment opinion in this case. *Mendez v. United States,* 2017 U.S. Dist. LEXIS 16153 at *3-5 (D.N.J. Feb. 3, 2017).

**III.**

**A. The NJCIA applies to the claims against CAMcare / the United States**

It is undisputed that Dr. Chang is a salaried employee of CAMcare, as opposed to a volunteer doctor providing *pro bono* services. Plaintiffs argue that this fact precludes the application of the FTCA's limited waiver provision, which in turn would preclude the application of either the absolute immunity provision or the damage cap provision the NJCIA.

7

Chief Judge Simandle and Judge Kugler, in separate cases, have both rejected this argument as it specifically applies to employees of CAMcare, *see Dupont v. United States*, 197 F. Supp. 3d 678, 683-686 (D.N.J. 2016) (Simandle, C.J.); *Young v. United States*, 152 F. Supp. 3d 337, 347-48 (D.N.J. 2015)(Kugler, D.J.), and another judge has rejected this argument as applied to a similar case. *See Gremminger v. United States*, 2017 U.S. Dist. LEXIS 46390 at *14-16 (D.N.J. 2017)(Wolfson, D.J.).

As *Gremminger*, *Dupont*, and *Young* comprehensively explain, Plaintiffs' attempt to distinguish *Lomando v. United States,* 667 F.3d 363 (3d Cir. 2011) -- which held that, under the FTCA, employees of a federally supported health center could assert the NJCIA as a defense to a medical malpractice action -- is unpersuasive. The fact that the health center at issue in *Lomando* provided free services through volunteer physicians was not integral to the holding.

The Court holds that the United States may assert the NJCIA as a defense to the claims in this suit.

**B. The United States is not entitled to absolute immunity**.

Section 7 of the NJCIA, "Immunity from liability for negligence," provides, in relevant part:

> No nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes or its trustees, directors, officers, employees, agents, servants or volunteers shall, except as is hereinafter set forth, be liable

8

> to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association.
>
> Nothing in this subsection shall be deemed to grant immunity to any health care provider, in the practice of his profession, who is a compensated employee, agent or servant of any nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes.

N.J.S.A. § 2A:53A-7(a).

The issue is whether CAMcare is "organized exclusively for . . . charitable . . . purposes." N.J.S.A. § 2A:53A-7(a). The United States argues that CAMcare is organized exclusively for charitable purposes, but candidly admits that two other judges in this District have rejected this argument "in cases with facts that are essentially indistinguishable from the facts presented here." (Moving Brief, p. 17, fn. 2)

Indeed, Chief Judge Simandle and Judge Kugler have both held that CAMcare is not organized exclusively for charitable purposes. *Dupont v. United States*, 197 F. Supp. 3d 678, 688-690 (D.N.J. 2016)(Simandle, C.J.); *Young v. United States*, 152 F.

Supp. 3d 337, 347-50 (D.N.J. 2015)(Kugler, D.J.).[3] The undersigned agrees with the reasoning of *Young* and *Dupont* and adopts it.

Moreover, the below discussion concerning the applicability of the NJCIA's damages cap provision supports the Court's conclusion. Since the two provisions are mutually exclusive, *see Kuchera v. Jersey Shore Family Health Center*, 221 N.J. 239, 245 (2015)(rejecting Appellate Division's "hybrid purpose analysis"), the Court's holding that the damages cap applies forecloses any holding that CAMcare is organized exclusively for charitable purposes. *Young*, 152 F. Supp. 3d 337, 347 (D.N.J. 2015)("if a nonprofit is organized 'exclusively for hospital purposes,' then no absolute immunity can apply. Accordingly, if this Court determines that CAMcare is organized exclusively for hospital purposes, then the jurisdictional inquiry is concluded.")(citing *Kuchera*).

The Court having held that the United States is not entitled to absolute immunity, the parties do not dispute that

---

[3] *See also Gremminger v. United States*, 2017 U.S. Dist. LEXIS 46390 at *25-26 (D.N.J. 2017)(Wolfson, D.J.)(holding that an FQHC similar to CAMcare is not organized exclusively for charitable purposes)(discussing *Young* and *Dupont* with approval); *S.M. v. United States*, 2016 U.S. Dist. LEXIS 175692 at *11-12 (D.N.J. 2016)(Rodriguez, S.D.J.)(holding that an FQHC similar to CAMcare is not organized exclusively for charitable purposes)(citing *Young* and *Dupont* with approval).

this Court may exercise subject matter jurisdiction over this suit. The United States' Rule 12(b)(1) motion will be denied.

**C.   The NJCIA damages cap applies.**

Section 8 of the NJCIA, "Liability of nonprofit hospital corporation," provides:

> Notwithstanding the provisions of the foregoing paragraph, any nonprofit corporation, society or association organized exclusively for hospital purposes shall be liable to respond in damages to such beneficiary who shall suffer damage from the negligence of such corporation, society or association or of its agents or servants to an amount not exceeding $250,000, together with interest and costs of suit, as the result of any one accident and to the extent to which such damage, together with interest and costs of suit, shall exceed the sum of $250,000 such nonprofit corporation, society or association organized exclusively for hospital purposes shall not be liable therefor.

N.J.S.A. § 2A:53A-8.

The issue is whether CAMcare is "organized exclusively for hospital purposes." N.J.S.A. § 2A:53A-8. Plaintiffs argue that "CAMcare is a primary care facility" that undisputedly provides "no inpatient acute care facilities," (e.g., CAMcare has no emergency room), and therefore "[i]t is not a hospital." (Opposition Brief, p. 21)

This argument misstates the issue. The question is not whether CAMcare is a hospital, as that term is traditionally understood by a layperson. The question is whether CAMcare is a "nonprofit corporation" "organized exclusively for hospital

11

purposes" as those terms are used in the NJCIA. In this regard, the New Jersey Supreme Court has clearly stated:

> [w]e discern no reason to confine the term "hospital purposes" to the vintage conception of a hospital as a facility providing a site for physicians to provide acute and continuous inpatient care for their patients. Rather, to effectuate the legislative mandate that the CIA should be liberally construed to effectuate its purpose, we focus on the many medical pursuits of a modern hospital in New Jersey.

*Kuchera*, 221 N.J. at 252 (2015).

CAMcare provides a wide variety of preventative services and primary care, 24 hours a day, seven days a week. The Court holds that these medical and health-related pursuits support a conclusion that CAMcare is organized exclusively for hospital purposes under the NJCIA. *See Kuchera*, 221 N.J. at 252 ("our conception of 'hospital purposes' needs to expand to reflect the many health-related pursuits of the modern hospital."); *see also Gremminger*, 2017 U.S. Dist. LEXIS 46390 at *28 (holding that an FQHC similar to CAMcare is organized exclusively for hospital purposes); *S.M.*, 2016 U.S. Dist. LEXIS 175692 at *15 (holding that an FQHC similar to CAMcare is organized exclusively for hospital purposes).

Accordingly, the Court holds that the NJCIA damages cap applies. The United States' motion for partial summary judgment will be granted.

**IV.**

For the reasons set forth above, the United States' motion to dismiss for lack of subject matter jurisdiction will be denied, and the motion for partial summary judgment will be granted. An appropriate Order accompanies this Opinion.

Dated: May 9, 2016        ___s/ Noel L. Hillman_____
At Camden, New Jersey     **Noel L. Hillman, U.S.D.J.**